| WALTZER, Judge.
This appeal involves a judgment determining the physical custody of two minor children and awarding child support to the domiciliary parent.
STATEMENT OF THE FACTS AND HISTORY OF THE CASE
George Constance, Jr. and Melissa Traill married on 15 September 1984. The couple had two children during the marriage, Erica and Emily Constance. After physically separating in June 1991, the couple divorced by judgment dated 16 August 1994. This judgment also adopted the agreement of the parties. The parents agreed to joint custody, designating Traill the domiciliary parent. Furthermore, Constance agreed “to provide support for the minor children in the manner in which he has done in the past.” He also agreed to pay post-divorce alimony.
The parents shared physical custody of the girls for several years. Specifically, Constance cared for his daughters when his former wife either worked or went to school. Constance paid the girls’ expenses, and he paid Traill alimony while *973 she worked on a nursing degree. Traill completed her education in December 1996. Moreover, pursuant to the parties’ 1994 agreement, Constances’ obligation to pay alimony terminated in December 1996.
|2On 4 April 1997, Traill demanded that the trial court determine the specific amount of child support owed by Constance. On 10 September 1997, Constance responded to the demand for child support with a request to modify the custodial arrangement. He asked that the court change the custody arrangement, granting him physical custody during the school week, and making him the primary domiciliary parent.
After trial on the various demands of the parties, the trial court entered a judgment (dated 10 July 1998), maintaining the joint custody arrangement, continuing Traill’s designation as the primary domiciliary parent and awarding a specific amount of child support.[1] The trial court determined that Constance owed Traill $1,317.00 per month for the support of the two minor gilds, after finding that Constance’s monthly gross income, subtracting reasonable business expenses, equaled $6,250.00 and that Traill’s monthly gross income equaled $3,558.00. The trial court explained its decision, regarding Constance’s adjusted monthly gross income, in its Reasons for Judgment;
The testimony of Mr. Constance showed that he earns $8,526.00 monthly from his self-employment as a paleontologist. Although there was testimony which suggested that more than half of that sum is used in expenses for his business, the Court determined a more reasonable and accurate fraction to be about one-third of his purported income.
Constance appeals the division of physical custody and the award of child support. He argues that the trial court erred when it did not award an equal sharing of physical custody and did not designate the parents co-domiciliary parents. | ¡¡Moreover, he argues that the trial court erred in its calculation of his adjusted monthly gross income.
FIRST ASSIGNMENT OF ERROR: The trial court erred in the award of physical custody and the designation of Traill as the primary domiciliary parent.
Constance argues that the trial court erred in the award of custody, complaining that he has a right to share equally with Traill the physical custody of the girls. The trial court found that such an arrangement did not serve the best interests of the two children. We review such factual findings for manifest error. Evans v. Lungrin, 97-6541 and 97-0577 (La.2/6/98); 708 So.2d 731, 735.
In a proceeding for divorce or thereafter, the court shall award custody of a child in accordance with the best interest of the child. LSA-C.C. art. 131. If the parents agree who is to have custody, the court shall award custody in accordance with their agreement unless the best interest of the child requires a different award. In the absence of agreement, or if the agreement is not in the best interest of the child, the court shall award custody to the parents jointly; however, if custody to one parent is shown by clear and convincing evidence to serve the best interest of the child, the court shall award custody to that parent. LSA-C.C. art. 132. Neither Constance nor Traill contests the award of joint custody.
Constance appeals the division of the physical custody of the children, not the award of legal custody. Evans, supra at 737. The trial court, pursuant to LSA-R.S. 9:335, continued the award of joint legal custody, designated the mother the primary custodial parent and ordered that the father have visitation every other weekend beginning after school on Friday and continuing until before school on |4the following Monday. The trial court also *974 awarded the father four weeks of visitation in the summer.
LSA-R.S. 9:335 provides, in pertinent part:
A(l) In a proceeding in which joint custody is decreed, the court shall render a joint custody implementation order except for good cause shown.
(2)(a) The implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents.
(b) To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally.
Constance argues that the trial court erred in the implementation order for joint custody because the order did not award equal sharing of physical custody. The trial court found:
In determining custody, the Court considered the young ages of the children and the need of the children for a sense of stability. Although the Court is sympathetic to Mr. Constance’s desire to spend a maximum amount of time possible with his children, the Court simply feels that the needs of the children, both in their emotional and academic development, are best served by designating one home as the children’s primary residence. The testimony of the parties, and of Ms. Patru, was that the two homes are very different environments. It is clear that the constant shuttling between the two homes would be very disruptive to the children. The schedule proposed by Ms. Patru and Mr. Constance risked giving the children a schedule which was erratic and hectic, a result which even Mr. Constance testified he wanted to avoid. Moreover, the specific schedule which the Court has ordered will further minimize the need for the parties to frequently communicate, which Ms. Patru testified would be of great benefit to the children.
In considering the best interest of the children, the court must consider all relevant factors. LSA-C.C. art. 134. These factors máy include;
(1) The love, affection and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
|s(3) The capacity and disposition of each party to provide the child with food, clothing, medical care and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10)The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
Both father and mother have shared the responsibility for these two girls. Erica and Emily have strong, healthy relationships with each parent. The girls did not testify. However, from the record we learn much about these two children. At trial, Erica was eleven years old and Emily was nine years of age. They were exam *975 ined on two occasions by a court appointed clinical social worker who testified. Eugenia Patru, qualified as an expert in the area of clinical social work, recommended that the court order a weekly rotation of physical custody of the girls between the two homes. She found that the girls wanted some flexibility, but they needed stability more than anything. She did not believe that the current schedule, if one could call it that, served the best interests of the girls. She believed that the parents should share physical custody equally since each parent enjoyed a strong, healthy relationship with the children. In part, she based her final recommendation, the weekly rotation, on her belief that this eliminated the need for an award of child support.
Constance and Traill testified that they are equally capable of caring for their children and have shared that responsibility in the past. For several years the | (¡parents have shared the physical custody of the girls on a random, daily, basis. In effect, the girls moved between houses depending on their parents’ needs. Since Traill started working as a nurse in April 1996, the parents shuffled the children between their houses to accommodate Traill’s schedule. Constance assumed custody when his former wife worked.
Each parent works. Traill works for West Jefferson General Hospital as a nurse. She works three days a week for twelve hour shifts. Traill receives her monthly schedule in advance. Constance is self-employed and primarily contracts his services as a paleontologist with Mobil Oil Corporation. He testified that he establishes his own working hours. However, he admitted he sometimes works as much as sixteen hours a day. He is the only employee of his business. Furthermore, he admitted that his duties require some travel, consisting of short trips on a random basis.
The record also reflects that Constance has remarried and has an infant son with his new wife. Moreover, his current wife works, but she intends to leave her employment to raise their child. She did not testify.
Unfortunately, Traill and Constance do not enjoy a healthy relationship. They find it difficult to communicate with each other. Traill talks more with Constance’s current wife about the needs of the girls than with their father. Patru testified that this animosity is harmful to the girls, and such controversy should be avoided to protect these young children, especially Emily who appears particularly susceptible to harm from this constant friction. Patru explained that she believed a fixed schedule would alleviate this conflict and help the girls.
Although the trial court did not implement the schedule recommended by the expert, the court in its reasons for judgment considered this testimony and the [ 7various opinions of the witnesses, including Patru. Neither Traill nor Constance believed that the weekly rotation served the best interests of the girls. However, Constance testified that he would agree to the schedule recommended by the expert, but he did not explain that he believed this rotation served the best interests of his children. The trial court found that these girls needed a fixed schedule of physical custody and a primary residence. She ordered that they live primarily with their mother, with whom they had a particularly close relationship and whom the parents had agreed to designate the primary custodial parent at the time of the divorce, in the home in which they had always lived. The father was allowed frequent and continuing visitation, every other weekend from Friday to Monday, alternating holidays and four weeks in the summer.
We are not persuaded from the record, viewed in its entirety, that the trial court erred in finding that equal sharing of physical custody between the two parents was not in the best interest of these two young girls and in determining the appropriate schedule of physical custody.
*976 SECOND ASSIGNMENT OF ERROR:
The trial court erred with its calculation of Constance’s adjusted gross income for determining his child support obligation.
Constance argues that the trial court erred by not deducting the total of the expenses which he claimed from the gross income of his business. Constance argues that the trial court erred in its calculation of his gross income. LSA-R.S. 9:315(4)(c) defines gross income for purposes of determining a parent’s child support obligation to include,
Gross receipts minus ordinary and necessary expenses required to produce income, for purposes of income from self-employment, rent, royalties, proprietorship of a business, or joint ownership or a | «partnership or closely held corporation. “Ordinary and necessary expenses” shall not include amounts allowable by the Internal Revenue Service for the accelerated component of depreciation expenses or investment tax credits or any other business expenses determined by the court to be inappropriate for determining gross income for purposes of calculating child support.
Constance testified that he operates a sole proprietorship. He works as a micro paleontologist. This business is his only source of income. For the first five months of 1998, Constances’ business earned $8,526.00 each month. He and his accountant testified that the business’ gross receipts totaled $34,576.67 for this time period and its operating expenses totaled $20,576.73. Constance calculates his gross income to be the difference or $13,999.93 ($2,799.99 per month).
Constance and his accountant, Luis In-gles, testified about the business’ expenses. However, Ingles reported that he calculated these expenses based only upon information provided by Constance. He did not audit Constance’s records for the accuracy of these sums. Moreover, he testified that many of these expenses seemed unusually high.
Constance admitted that many of the expenses which he claimed constituted, in whole or in part, personal expenditures, his 1989 Alpha Romeo Spider automobile ($2,468.02), telephone expenses ($1,684.00), entertainment expenses ($2,029.35), and bank charges. Moreover, Constance testified that he claims depreciation expenses totaling $3,409.78 or 100% of this alleged expense for the entire year. Ingles testified that generally most businesses earn a net income, gross receipts minus operating expenses, of one-fourth of the gross receipts. Furthermore, Ingles explained that in previous years, Constance’s net income equaled approximately forty to forty-five percent of his gross receipts. However, we do not have before us any evidence regarding Constance’s income or expenses |»for the previous year, 1997. Constance testified, when questioned upon cross-examination, that he provided this information to his accountant who would testify. But the accountant testified that Constance had not provided him with such information.
The trial court found that Constance’s gross income equaled $6,250.00. However, in its Reasons for Judgment, the trial court explained that the business’ gross receipts, $8,526.00, should be reduced by one-third for expenses. We are not persuaded, after our review of the entire record, that the trial court abused its discretion in calculating Constance’s gross income. The testimony proves that a large percentage of the alleged expenses were neither business-related nor ordinary and necessary within the meaning of LSA-9:315(4)(c). After hearing the evidence concerning these expenses, the trial court, in its judgment, reduced Constance’s net receipts by one-fourth. We do not believe the trial court erred in its determination of Constance’s gross income.
The discrepancy between the calculation in the Judgment and the fraction announced in the Reasons for Judgment *977 requires our consideration. Such a discrepancy does not constitute an error in calculation, allowing an amendment by the trial court. LSA-C.C.P. art.1951. Moreover, we do not see the need for a de novo review since we can not say that the trial court erred. Evans, supra at 735. We do not believe that either the one-third or the one-fourth calculation constitutes error. However, we do believe the trial court must clarify this discrepancy.
CONCLUSION
For the above reasons, we affirm the custody award and remand the matter for a determination of the trial court’s clarification of its calculation of the [ ^appropriate reduction for expenses in the calculation of Constance’s adjusted gross income.
AFFIRMED AND REMANDED.
MURRAY, J., dissents in part.

. The parties also demanded a partition of the assets and debts of the community which the trial court did. However, the parties do not appeal this decision.