# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                    NEWS RELEASE #059

FROM: CLERK OF SUPREME COURT OF LOUISIANA


The Opinions handed down on the **23rd day of November, 2015**, are as follows:


**BY WEIMER, J.:**


2015-CJ-0585       JUSTIN HODGES v. AMY HODGES (Parish of Livingston)

                   Accordingly, we remand this matter to the trial court for a
                   prompt hearing and determination on how joint custody should be
                   implemented, consistent with our opinion herein, which excludes
                   the possibility of designating both parents as "co-domiciliary
                   parents."

                   AFFIRMED IN PART; REVERSED IN PART; REMANDED.

                   KNOLL, J., additionally concurs with reasons.
                   HUGHES, J., dissents with reasons.

# SUPREME COURT OF LOUISIANA

## NO. 2015-CJ-0585

## JUSTIN HODGES

## VERSUS

## AMY HODGES

*ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,*
*FIRST CIRCUIT, PARISH OF LIVINGSTON*

**WEIMER**, Justice.

We granted certiorari in this child custody matter to review the designation of both parents as "co-domiciliary parents," a designation which has divided the courts of appeal. Additionally, we must review the related question of whether the trial court issued a valid joint custody implementation order. After analyzing La. R.S. 9:335, we reverse that portion of the appellate court decision upholding the trial court's designation of "co-domiciliary parents." We agree with the court of appeal that the custody judgment rendered by the trial court failed to comply with the requirements for a joint custody implementation order, as stated in La. R.S. 9:335(A)(3). Given the absence of either a proper designation of a sole domiciliary parent or a valid joint custody implementation order, we remand to the trial court for a prompt hearing and determination on how joint custody should be implemented.

## FACTS AND PROCEDURAL HISTORY

Justin Hodges ("father") and Amy Hodges ("mother") were married in Ascension Parish on January 22, 2011, and, thereafter, established their matrimonial domicile in Livingston Parish. One child was born of the marriage on June 25, 2012.

On May 28, 2014, the father instituted divorce proceedings in Livingston Parish. Both the father and the mother sought joint custody of the minor child, M.H., as well as to be designated as the child's domiciliary parent. After a hearing, the trial court granted joint custody to the parents, ordered equal physical custody to be alternated weekly, and designated both parties as "co-domiciliary parents."

The mother appealed the trial court decision, contending that its designation of both parents as "co-domiciliary parents" is not authorized by La. R.S. 9:335; she sought to be named as the sole domiciliary parent. The appellate court affirmed the "co-domiciliary" designation, but ruled that no valid joint custody implementation order had been rendered and remanded the case to the trial court "for the entry of a joint custody implementation order allocating the legal authority and responsibility of the parents with regard to the health, education, and welfare of the child." See **Hodges v. Hodges**, 14-1575 (La.App. 1 Cir. 3/6/15), 166 So.3d 348, 356.

On application of the mother, this court granted a writ of certiorari. See **Hodges v. Hodges**, 15-0585 (La. 5/15/15), 169 So.3d 380.

## LAW AND ANALYSIS

In a proceeding for divorce or thereafter, the court shall award custody of a child in accordance with the best interest of the child. La. C.C. art. 131. The best interest of the child is the sole criterion to be met in making a custody award, as the trial court sits as a sort of fiduciary on behalf of the child and must pursue actively that course of conduct which will be of the greatest benefit to the child. **C.M.J. v.**

2

**L.M.C.**, 14-1119 (La. 10/15/14), 156 So.3d 16, 28, *quoting* **Turner v. Turner**, 455 So.2d 1374, 1378 (La. 1984). It is the child's emotional, physical, material and social well-being and health that are the court's very purpose in child custody cases; the court must protect the child from the real possibility that the parents are engaged in a bitter, vengeful, and highly emotional conflict. *Id.* The legislature has mandated that the court look only to the child's interests so that the court can fulfill its obligations to the child. *Id.* at 28-29.

If the parents agree who is to have custody, the court shall award custody in accordance with their agreement unless the best interest of the child requires a different award. La. C.C. art. 132. In the absence of an agreement, or if the agreement is not in the best interest of the child, the court shall award custody to the parents jointly; however, if custody in one parent is shown by clear and convincing evidence to serve the best interest of the child, the court shall award custody to that parent.[1] *Id.*

As provided in La. C.C. art. 134, all relevant factors in determining the best interest of the child must be considered by the court; such factors may include: (1) the love, affection, and other emotional ties between each party and the child; (2) the capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child; (3) the capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs; (4) the length of time the child has lived in a stable, adequate environment and the desirability of maintaining continuity of that environment; (5) the permanence, as a family unit, of the existing or proposed custodial home or

---

[1] A parent not granted custody or joint custody of a child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would not be in the best interest of the child. La. C.C. art. 136(A).

homes; (6) the moral fitness of each party, insofar as it affects the welfare of the child; (7) the mental and physical health of each party; (8) the home, school, and community history of the child; (9) the reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference; (10) the willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party; (11) the distance between the respective residences of the parties; and (12) the responsibility for the care and rearing of the child previously exercised by each party.

The list of factors provided in Article 134 is nonexclusive, and the determination as to the weight to be given each factor is left to the discretion of the trial court. See La. C.C. art. 134, 1993 Revision Comment (b). The illustrative nature of the listing of factors contained in Article 134 gives the court freedom to consider additional factors; and, in general, the court should consider the totality of the facts and circumstances of the individual case. See La. C.C. art. 134, 1993 Revision Comment (c).

In short, there are a number of factors which must be evaluated by a court in arriving at the decision to award joint custody to the parents. However, once that decision is reached, La. R.S. 9:335, which is at the heart of the present case, governs a court's determination of the details of the custody arrangement. With emphasis on the provisions especially relevant to the issues of domiciliary parent designation and implementation order, we reproduce the statute in full:

> A. (1) In a proceeding in which joint custody is decreed, the court shall render *a joint custody implementation order* except for good cause shown.
>
> (2)(a) The implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents.

(b) To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally.[2]

(3) The implementation order shall allocate the legal authority and responsibility of the parents.

B. (1) In a decree of joint custody the court shall designate *a domiciliary parent* except when there is an implementation order to the contrary or for other good cause shown.

(2) *The domiciliary parent* is the parent with whom the child shall primarily reside, but the other parent shall have physical custody during time periods that assure that the child has frequent and continuing contact with both parents.

(3) *The domiciliary parent* shall have authority to make all decisions affecting the child unless an implementation order provides otherwise. All major decisions made by *the domiciliary parent* concerning the child shall be subject to review by the court upon motion of the other parent. It shall be presumed that all major decisions made by *the domiciliary parent* are in the best interest of the child.

C. If *a domiciliary parent* is not designated in the joint custody decree and an implementation order does not provide otherwise, joint custody confers upon the parents the same rights and responsibilities as are conferred on them by the provisions of Title VII of Book I of the Civil Code.[3] [Emphasis added.]

In this case, the mother contends that the trial court's judgment is insufficient to constitute a joint custody implementation order. According to the mother, the judgment addresses physical custody, but fails to designate which parent has decision-making authority for the child. The mother also contends the trial court legally erred in designating both parents as "co-domiciliary parents," rather than

---

[2]  A child has a right to time with both parents. Accordingly, when a court-ordered schedule of visitation, custody, or time to be spent with a child has been entered, a parent shall exercise his rights to the child in accordance with the schedule unless good cause is shown. Neither parent shall interfere with the visitation, custody, or time rights of the other unless good cause is shown. La. C.C. art. 136.1.

[3]  On the issue of parental authority, La. C.C. art. 216 provides:

A child remains under the authority of his father and mother until his majority or emancipation.
In case of difference between the parents, the authority of the father prevails.

designating a single "domiciliary parent." The mother urges that under La. R.S. 9:335, there can only be one domiciliary parent.

Of the two issues presented, we first analyze whether, under La. R.S. 9:335, there can only be one domiciliary parent. Because that issue addresses what the statute permits, resolving that issue should aid our resolution of the second issue, *i.e.*, whether the trial court's judgment sets forth an implementation order.

Mindful of our civilian mandate, our analysis begins with the words of the statute itself. See La. R.S. 1:4 ("When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit."). The meaning of "domiciliary parent" derives from La. R.S. 9:335. See La. R.S. 24:177(B)(1) ("The text of a law is the best evidence of legislative intent."). As La. R.S. 9:335 is laid out, its first part, section (A)(1), makes the general provision for joint custody and indicates an "implementation order" is the default plan for joint custody. However, section (A)(1) also indicates an "implementation order" is not always required; there is an exception for the issuance of an "implementation order" when there has been "good cause shown."

Section (2)(a) then indicates that when rendered, an implementation order "shall allocate time each parent shall have physical custody," with the goal of joint custody being "that the child is assured of frequent and continuing contact with both parents." Another goal of joint custody, described in section (2)(b), is that as long as it is feasible and in the child's best interest, "physical custody of the children should be shared equally."

However, physical custody is a separate matter from legal authority and responsibility over a child. As we previously observed, "[t]he term 'custody' is usually broken down into two components: *physical* or 'actual' *custody* and *legal*

6

*custody*." **Evans v. Lungrin**, 97-0541, p. 19 (La. 2/6/98), 708 So.2d 731, 737. Accordingly, legal authority and responsibility are addressed in the next section of La. R.S. 9:335 (section (A)(3)), which provides that an "implementation order shall allocate the legal authority and responsibility of the parents."

A pivotal provision at issue in this case, section (B)(1), makes logistical arrangements for some of the variables that the earlier statutory provisions recognized may exist within joint custody. Because one goal of joint custody is that "physical custody … should be shared equally" (section (A)(2)(b)), yet an implementation order is not always required (section (A)(1)), it is logical that the court "designate a domiciliary parent" (section (B)(1)) so the parents and child are clear as to who has legal authority and responsibility.

Indeed, the very next provision in La. R.S. 9:335, section (B)(2), provides the definition of a domiciliary parent: "The domiciliary parent is the parent with whom the child shall primarily reside …." This definition is notable for its use of the singular, *i.e.*, "the parent." While it is true that as a general principle of statutory interpretation that "[w]ords used in the singular number include the plural" (La. R.S. 1:7), that rule does not necessarily hold true for specialized terms in the law. "Words of art and technical terms must be given their technical meaning when the law involves a technical matter." La. C.C. art. 11[4]. Not only is this a specialized area of the law, but the definition provided excludes the possibility of having more than one domiciliary parent because it is logically impossible for the stipulation in La. R.S.

---

[4] Because the statute at issue (La. R.S. 9:335) is located within Title 9, Civil Code–Ancillaries, at this juncture we draw from an interpretive principle of the Civil Code, but the same primacy of specialized meaning for "technical terms" found in La. C.C. art. 11 is also found in La. R.S. 1:3 ("Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.").

9:335(B)(2) that "[t]he domiciliary parent is the parent with whom the child shall primarily reside" to be met by both parents.[5]  If the time of residence with one parent must be primary, there must be a parent whose time of residence is secondary.[6]

The possibility of more than one domiciliary parent is also logically excluded by the next provision of the statute.  Under section (B)(3), "unless an implementation order provides otherwise," the authority of singular domiciliary parent is elevated in comparison to the non-domiciliary parent: "[t]he domiciliary parent shall have authority to make all decisions affecting the child," but the authority of the "domiciliary parent" can be challenged in court by "the other parent."  Moreover, section (B)(3) contains a presumption, which logic dictates can only work if there is but one domiciliary parent:  "It shall be presumed that all major decisions made by the domiciliary parent are in the best interest of the child."  Stated differently, if there are two domiciliary parents and the implementation order does not shed light on which of them has superior authority, there is no way to ascertain which of the parents' decisions must be "presumed" to be "in the best interests of the child."  La. R.S. 9:335(B)(3).  The court of appeal purported to resolve this problem by dictating that in a co-domiciliary arrangement, the parent with whom the child is residing at the time would have decision-making authority during the time the child resides with the parent.  **Hodges**, 14-1575 at 8, 166 So.3d at 354.  However, the appellate court's solution could invite second-guessing, discord, and uncertainty for the child because

---

[5]  The existence of a statutory definition underscores that this is a specialized area because there would be no need to define the term if it had a generally understood meaning.  See La. C.C. art. 11 ("The words of a law must be given their generally prevailing meaning.").  Parenthetically, we also note that family law is one of the recognized areas of legal specialization in Louisiana.

[6]  Although a goal of joint custody under La. R.S. 9:335 is that "physical custody ... should be shared equally," (section (A)(2)(b)), it appears a practical recognition is contained in section (B)(2) that, even under the most equitable arrangements, the sharing of time between parents will never be exactly equal.

major decisions could vacillate with each parent in a joint custody arrangement such as the one at issue here in which the child would alternate residency from week to week. For this reason, and the more fundamental reason that the appellate court has resorted to a solution at odds with the statutory language, we reject the proposition that there can be more than one domiciliary parent whose authority is presumed to be in the best interests of the child. See La. C.C. art. 9 ("When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written ....").[7]

Read as a whole, therefore, we conclude the plain language of La. R.S. 9:335 manifests the legislature's clear intent to establish a custodial system in which a child has a domiciliary parent and no more than one such parent. The text is clear. Although each parent can share physical custody, the court can only designate a single domiciliary parent. See La. R.S. 9:335(A)(2)(b) and (B)(1); see also **Evans**, 97-0541 at 11, 708 So.2d at 737 (Noting that before enactment of La. R.S. 9:335, the concept of joint legal custody "involved *a sharing of the responsibilities* concerning the child including decisions about education, medical care, discipline and other matters relating to the upbringing of the child," but "[w]ith the enactment of Act 261 [including La. R.S. 9:335] ..., the decision-making rules have changed. Presently,

---

[7] According to Professor Katherine Shaw Spaht, designating "co-domiciliary parents" results from a logically flawed reading of La. R.S. 9:335. Specifically, Professor Spaht remarked:

> La. R.S. 9:335(B) provides for the designation of a domiciliary parent in a joint custody order which fails to include an implementation plan as described in Paragraph A. The domiciliary parent is defined as "the parent with whom the child primarily resides." Most joint custody orders designate a domiciliary parent and Paragraph B governs who exercises legal and physical custody of the child. By definition, however, there can be only one domiciliary parent–the parent with whom the child primarily resides. The designation of co-domiciliary parents creates an oxymoron.

Katherine Shaw Spaht, *The Two "ICS" of the 2001 Louisiana Child Support Guidelines: Economics and Politics*, 62 LA. L. REV. 709, 728 n.73 (2002).

when parties are awarded joint custody, the court must designate a domiciliary parent unless the implementation order provides otherwise, or for other good cause shown."). The appellate court, therefore, erred in holding there can be more than one parent designated as a domiciliary parent.

The appellate court in the instant case is hardly alone in this error. One of the reasons we granted review of this case was to resolve differing results within the appellate courts as to whether both parents could be designated as domiciliary parents. The issue of whether a "co-domiciliary" designation is valid under La. R.S. 9:335 was specifically discussed in **Hodges v. Hodges**, 14-1575 (La.App. 1 Cir. 3/6/15), 166 So.3d 348 (the instant case); **Distefano v. Distefano**, 14-1318 (La.App. 1 Cir. 1/22/15), 169 So.3d 437; and **Stewart v. Stewart**, 11-1334 (La.App. 3 Cir. 3/7/12), 86 So.3d 148. The appellate courts in **Hodges**, **Distefano**, and **Stewart** decided that having more than one domiciliary parent was permissible. See also **Smith v. Smith**, 07-1163, 2008WL588906 (La. App. 3 Cir. 3/5/08) (unpublished), 977 So.2d 312 (table) (affirming the trial court's decision maintaining the mother as primary domiciliary custodian, but also naming the father as "co-domiciliary" to facilitate easier access to school records and to allow him to pick up the child from school without prior notice from the mother); **Lincecum v. Lincecum**, 01-1522 (La.App. 3 Cir. 3/6/02), 812 So.2d 795, 798 (wherein the appellate court equated the failure of the trial court to name a domiciliary parent "to essentially be co-domiciliary parents"); **Perkins v. Perkins**, 99-1130 (La.App. 1 Cir. 12/28/99), 747 So.2d 785, writ denied as improvidently granted, 00-0269 (La. 3/24/00), 758 So.2d 141 (per curiam)[8] (wherein the appellate court reversed a trial court's decision, which changed

---

[8] In recalling the writ grant, this court stated: "Upon plaintiff's application, we granted certiorari in this case .... After hearing oral arguments and reviewing the record of the matter, we conclude that the judgment below does not require the exercise of our supervisory authority. Accordingly, we

a prior stipulated designation of "co-domiciliary parents" to name the mother as the sole domiciliary parent and reinstated the prior consent judgment naming the parties "co-domiciliary parents"); **Remson v. Remson**, 95-1951 (La.App. 1 Cir. 4/4/96), 672 So.2d 409 (wherein the appellate court first stated that the trial court for "'good cause shown' declined to name a domiciliary parent," but thereafter stated, "We affirm the trial court's ... order for co-domiciliary status of the parties.").[9]

On the other hand, three appellate court decisions have expressly held that La. R.S. 9:335 provides no authority for a court to designate the parties as "co-domiciliary parents." See **Hanks v. Hanks**, 13-1442, pp. 23, 29-30 (La.App. 4 Cir. 4/16/14), 140 So.3d 208, 224, 227 (rejecting an alternate recommendation from a court-appointed counselor who performed a custody evaluation and testified "that there was nothing negative about [the father] and [the mother] being designated as co-domiciliary parents, provided they could work together," the court observed that there was no statutory authority for a designation of co-domiciliary parents); **Molony**

---

recall our order of February 16, 2000 as improvidently granted, and deny plaintiff's application." **Perkins**, 788 So.2d at 141.

[9] Numerous reported cases have mentioned the designation of the parties as "co-domiciliary parents," either having been stipulated to, granted, or sought; however, the validity of "co-domiciliary parents" under La. R.S. 9:335 was not an issue presented to the appellate courts for review and was not discussed in these cases. The following are examples from just the past several years. See, e.g., **Szwak v. Szwak**, 49,938 (La.App. 2 Cir. 4/15/15), 163 So.3d 911; **Cole v. Cole**, 13-1442 (La.App. 3 Cir. 6/4/14), 139 So.3d 1225; **Koussanta v. Dozier**, 14-0059 (La.App. 5 Cir. 5/21/14), 142 So.3d 202; **Blanc v. Hill**, 13-1961, 2014WL1778354 (La.App. 1 Cir. 5/2/14) (unpublished); **Bond v. Bond**, 13-1733 (La.App. 1 Cir. 3/24/14) (unpublished), writ denied, 14-1054 (La. 9/12/14), 148 So.3d 932; **Pepiton v. Turner**, 13-1199 (La.App. 3 Cir. 3/5/14), 134 So.3d 160; **Bagwell v. Bagwell**, 48,913 (La.App. 2 Cir. 1/15/14), 132 So.3d 426, writ denied, 14-0356 (La. 3/14/14), 135 So.3d 608; **Bush v. Bush**, 13-0922 (La.App. 1 Cir. 12/27/13), 137 So.3d 49; **Harvey v. Harvey**, 13-0081 (La.App. 3 Cir. 6/5/13), 133 So.3d 1, writ denied, 13-1600 (La. 7/22/13), 119 So.3d 596; **Manuel v. Bieber**, 12-1303, 2013WL832362 (La.App. 3 Cir. 3/6/13) (unpublished), 110 So.3d 293 (table); **Thibodeaux v. Thibodeaux**, 12-752 (La.App. 3 Cir. 12/5/12), 104 So.3d 768; **Coleman v. Coleman**, 47,080 (La.App. 2 Cir. 2/29/12), 87 So.3d 246; **Hernandez v. Hernandez**, 11-0526 (La.App. 5 Cir. 12/28/11), 83 So.3d 168, writ denied, 12-0271 (La. 3/30/12), 85 So.3d 124; **Kingston v. Kingston**, 11-1629 (La.App. 1 Cir. 12/21/11), 80 So.3d 774; **Westbrook v. Weibel**, 11-0910 (La.App. 3 Cir. 12/7/11), 80 So.3d 683, writ denied, 12-0403 (La. 3/7/12), 83 So.3d 1048; **Bergeron v. Bergeron**, 10-0964, 2011WL1938668 (La.App. 1 Cir. 5/6/11) (unpublished), 66 So.3d 77 (table).

**v. Harris**, 10-1316 (La.App. 4 Cir. 2/23/11), 60 So.3d 70 (ruling that the co-domiciliary parent "designation does not comply with the mandate of La. R.S. 9:335(B) that the court 'shall designate a domiciliary parent.'"); **Ketchum v. Ketchum**, 39,082 (La.App. 2 Cir. 9/1/04), 882 So.2d 631 ("[W]e find no authority in the law for a designation of 'co-domiciliary' parents."). Nevertheless, both the Second and Fourth Circuits have also ruled that a trial court may designate "co-domiciliary parents." See **St. Philip v. Montalbano**, 12-1090 (La.App. 4 Cir. 1/9/13), 108 So.3d 277, 279 n.3 (wherein the trial court designated the parents "co-domiciliary," and the appellate court refused to rule on the father's assignment of error related to the co-domiciliary status as he raised the issue for the first time on appeal, but also stating: "Although this court in **Molony v. Harris** ... held that it is legally erroneous to designate 'co-domiciliary parents,' an exception is recognized when the trial court issues a valid implementation order specifying the authority and responsibility of each parent with regard to the child. The trial court in this case issued such an order."); **Schmidt v. Schmidt**, 08-0263 (La.App. 4 Cir. 2/11/09), 6 So.3d 197, writ denied, 09-0566 (La. 4/3/09), 6 So.3d 779 (wherein the appellate court affirmed the trial court's refusal to modify its prior designation of "co-domiciliary parents"); **Craig v. Craig**, 42,363 (La.App. 2 Cir. 5/9/07), 956 So.2d 819, writ denied, 07-1349 (La. 7/27/07), 960 So.2d 64 (wherein the appellate court reversed a trial court's decision to name the father as the sole domiciliary parent and reinstated a prior joint custody implementation plan that included a "co-domiciliary" designation).

Thus, the jurisprudence on the issue of whether there can only be one domiciliary parent is inconsistent. The First, Third, and Fifth Circuit decisions, expressly or impliedly, have determined that a "co-domiciliary" designation does not

run afoul of La. R.S. 9:335, while the Second and Fourth Circuits have handed down mixed opinions on the issue. Our decision in the instant case resolves this inconsistent jurisprudence by holding–as we find La. R.S. 9:335 unequivocally requires–that there can be only one domiciliary parent.

Our review of the jurisprudence would not be complete, however, without some further observations. The appellate court decisions that have affirmatively designated or at least allowed the designation of co-domiciliary parents are more numerous than those that did not. We believe the numerosity of such decisions may stem from a well-intentioned, but erroneous, belief that it is necessary for a court to use the term "co-domiciliary parents" in order to provide both parents with shared legal and physical custody. Although La. R.S. 9:335(B)(1) provides that "[i]n a decree of joint custody the court *shall* designate a domiciliary parent," the legislature provided two exceptions to this mandate–that is, (1) "when there is an *implementation order* to the contrary" or (2) "for other good cause shown." (Emphasis added.) In other words, while La. R.S. 9:335(B)(1) provides a preference for the designation of "*a* domiciliary parent," a court could choose not to designate a domiciliary parent at all and, instead, to allocate authority by means of an *implementation order*. See **Evans**, 97-0541 at 11, 708 So.2d at 737. Indeed, according to La. R.S. 9:335(A)(1), (2)(a), and (3), when joint custody is decreed and in the absence of "good cause shown," a joint custody implementation order "shall allocate the time periods during which each parent shall have *physical custody* of the child"[10] *and* "shall allocate the *legal authority and responsibility* of the parents."[11] (Emphasis added.)

---

[10] La. R.S. 9:335(A)(2)(a).

[11] La. R.S. 9:335(A)(3).

We recognize that trial and family courts facing the myriad challenges in fashioning remedies in joint custody cases need as many arrows in their judicial quiver as possible. Designating both parents as "co-domiciliary" parents might seem to be an alluring target for quelling an acrimonious dispute between the parents. However, any satisfaction both parties may derive from being bestowed that designation is likely to be vitiated by the legal uncertainties stemming from its use. As previously discussed, uncertainty and confusion are the likely results of using the designation "co-domiciliary parents," a designation which is contrary to the framework of La. R.S. 9:335.

In short, the legislature envisioned the joint custody implementation order allocating both physical and legal custody. It is therefore unnecessary and contrary to the plain language of La. R.S. 9:335 to designate both parents as "co-domiciliary parents" in order to allocate parental responsibility. By making available an implementation order, the legislature has given courts great procedural flexibility to craft a custody arrangement on a case-by-case basis that promotes "the best interest of the child." La. C.C. art. 131. Or, continuing with our earlier analogy, the legislature has provided a full quiver for targeting the child's best interests, and resorting to an implement outside that legislative quiver, *i.e.*, a designation of "co-domiciliary parents," is more likely to miss the mark.

We now turn to the question of whether the trial court's judgment suffices as a joint custody implementation order. The trial court signed a judgment decreeing that: the parties have joint custody of the child; the parties share equally in the physical custody of the child "on a week to week basis," with the parties exchanging the child between 6:00 and 7:00 p.m. on Wednesdays; the party retrieving the child has the responsibility for his transportation; and the parties must "work together such

14

that they equally share physical custody of [the child] during the holidays." The judgment also ordered that: the mother must maintain the current health insurance policy for the child; the parents are to be proportionally responsible for any uncovered medical costs, with 50.4 percent to be paid by the father and 49.6 percent to be paid by the mother; the child's daycare costs are to be paid by the parent who has physical custody of the child at the time the costs are incurred; the father has the right to claim the child on his tax return in odd-numbered years and the mother has the right to do so in even-numbered years; and the father owes the mother $107.30 per month in child support.[12]

Significantly, this is the same judgment in which the court decreed: "the parties shall be designated as co-domiciliary parents." In oral reasons, the trial court indicated:

> We've got a two year old little boy here. Despite your problems, it sounds like you both care and love him very deeply. You have worked out an -- an arrangement that sounds like it's been working for at least a little while now. And I know it's not going to be a long-term solution. At some point [the child] is going to be of school age. But for at least the next couple of years, the court is going to maintain joint custody, subject to a week to week plan of visitation.
>
> . . . .
>
> I will maintain the current exchange at between 6:00 and 7:00, with the party to retrieve the child doing the transportation. I'll designate you both as co-domiciliary parents.
>
> . . . .
>
> If [the parties] can't work [a holiday schedule] out, the court will set a specific holiday schedule.[13] ...

---

[12] Additional matters related to community property were also addressed in the judgment which are not relevant to this proceeding and are not discussed herein.

[13] When the court asked, "Is there anything else?" counsel for the father indicated, "Holidays." The court replied, "You can split the days," and the father stated, "We can work that out." We note that this exchange, taken together with the fact that the trial court continued the plan the parties already had in place for equal sharing of the physical custody of the child, suggests that the trial court merely

. . . .

> I'd like to say this is the last time I'll see you in court, but given the fact that [the child] is two years old, I know this plan may only work for the next couple of years, ma'am, with you living in Baton Rouge and, sir, with you living in Livingston Parish. If you aren't able to ... work out a plan that works for [the child] when he becomes school age, the court will be happy to hear from you again and see how things are going.

As an initial matter, even though no separate "joint implementation order" was issued by the trial court, La. R.S. 9:335 does not require a particular form for the rendition of a joint custody implementation order. See, e.g., **Caro v. Caro**, 95-0173 (La.App. 1 Cir. 10/6/95), 671 So.2d 516, 518 ("La. R.S. 9:335 does not require a specific form be used for the implementation plan. The [custody] judgment awarded joint custody, designated a domiciliary parent, ordered a visitation and holiday schedule with set dates and venues included .... The judgment in the record qualifies as the custody order and the implementation plan. The fact that the order was not entitled 'implementation plan,' is of no consequence.").

With respect to what items must be included within a joint custody implementation order, La. R.S. 9:335 expressly states: "The implementation order shall allocate *the time periods during which each parent shall have physical custody of the child* so that the child is assured of frequent and continuing contact with both parents. ... The implementation order shall allocate *the legal authority and responsibility of the parents*." La. R.S. 9:335(A)(2)(a) and (3) (emphasis added). Thus, La. R.S. 9:335 expressly requires that a joint custody implementation order

---

gave effect to the parties' agreement as to physical custody of the child. See La. C.C. art. 132 ("If the parents agree who is to have custody, the court shall award custody in accordance with their agreement unless the best interest of the child requires a different award."). See also **Shaw v. Shaw**, 30,613 (La.App. 2 Cir. 6/24/98), 714 So.2d 906, 908, writs denied, 98-2414, 98-2426 (La. 11/20/98), 729 So.2d 556, 558 ("[T]he trial court determined that the existing Joint Custody Plan adopted in 1994 was not specific with respect to [the father's] visitation rights, but that the parties had apparently worked out a schedule between themselves over the two years. The court thus treated the matter as one where there had been an agreed physical custody plan and applied the law related to consent judgments of custody ....").

16

must contain: (1) the time periods during which each parent shall have physical custody of the child; and (2) the legal authority and responsibility of the parents. See, e.g., **Angelette v. Callais**, 10-2279, p. 4 (La.App. 1 Cir. 5/6/11), 68 So.3d 1122, 1125 ("The … consent judgment awarded joint custody, ordered a physical custody and holiday custody schedule with set dates and venues included, and contained provisions for the parents' rights and responsibilities relative to claiming [the child] for income tax purposes, maintaining health insurance on [the child], and the payment of child support ....  The [custody] judgment qualifies as the custody order and the implementation plan.").

While the judgment here has no formal defects and specifies time periods during which each parent shall have physical custody, the second requirement is unmet, that is, the judgment fails to "allocate the legal authority and responsibility of the parents." La. R.S. 9:335(A)(3).  Although a court is not required to issue a "joint custody implementation order" when there is "good cause shown" (La. R.S. 9:335(A)(1)), because the trial court provided a judgment that suffices as an implementation order in all aspects except allocating legal authority, it is apparent that the trial court did not find "good cause" for not issuing an implementation order. In other words, the trial court intended its judgment to serve as an implementation order.

As we indicated in our earlier analysis, the trial court judgment's designation of "co-domiciliary parents" does not comport with La. R.S. 9:335.  The designation does not validly "allocate the legal authority and responsibility of the parents."  La. R.S. 9:335(A)(3).  Thus, we find the trial court's judgment made in the instant case cannot suffice as a joint custody implementation order.

**CONCLUSION**

We hold that La. R.S. 9:335 precludes the designation of "co-domiciliary parents" in a joint custody arrangement. It is unnecessary and contrary to the plain language of La. R.S. 9:335 to designate both parents as "co-domiciliary parents" in order to allocate parental responsibility. For example, when a court wishes to depart from the default rule that the sole domiciliary parent has superior decision-making authority, a court can make different provisions for decision making within the joint custody implementation order.

Further, we find that La. R.S. 9:335 does not explicitly require a particular form for the rendition of a joint custody implementation order, and we hold the only mandatory requirements for a joint custody implementation order stated in La. R.S. 9:335 are: (1) the time periods during which each parent shall have physical custody of the child; and (2) the legal authority and responsibility of the parents. Here, we find the trial court's judgment failed to validly allocate the legal authority and responsibility of the parents.

In conclusion, we reverse the appellate court's decision, to the extent the appellate court upheld the trial court's designation of "co-domiciliary parents." We agree with the appellate court inasmuch as we find that no valid joint custody implementation order has been rendered.

Because we have corrected an error of law by the trial court in designating both parents as "co-domiciliary parents," we must determine a procedure to best resolve this case. We find the following observations instructive:

> Typically where … legal errors have interdicted the fact finding process, if the record is otherwise complete, the appellate court should make its own independent *de novo* review of the record. **Landry v. Bellanger**, 2002-1443 (La.5/20/03), 851 So.2d 943, 954; **Ferrell v. Fireman's Fund Ins. Co.**, 94-1252 (La.2/20/95), 650 So.2d 742, 745; **Ragas v.**

**Argonaut Southwest Insurance Co.**, 388 So.2d 707, 708 (La. 1980). However, we have also recognized that *de novo* review is not the best course of action in every case. **Ragas**, 388 So.2d at 708. This Court explained in **Ragas**:

> This is not to say … that the appellate court must find its own facts in every such case. There are cases where the weight of the evidence is so nearly equal that a first-hand view of witnesses is essential to a fair resolution of the issues. The appellate court must itself decide whether the record is such that the court can fairly find a preponderance of the evidence from the cold record. Where a view of the witnesses is essential to a fair resolution of conflicting evidence, the case should be remanded for a new trial.

**Wegener v. Lafayette Ins. Co.**, 10-0810, 10-0811, p. 19 (La. 3/15/11), 60 So.3d 1220, 1233.

Here, because the trial court did not choose one parent over the other but instead ruled that both parents should be "co-domiciliary parents," we find that "the weight of the evidence is so nearly equal that a first-hand view of witnesses is essential to a fair resolution of the issues." See **Wegener**, 10-0810, 10-0811 at 19, 60 So.3d at 1233. Accordingly, we remand this matter to the trial court for a prompt hearing and determination on how joint custody should be implemented, consistent with our opinion herein, which excludes the possibility of designating both parents as "co-domiciliary parents."

**AFFIRMED IN PART; REVERSED IN PART; REMANDED.**

**SUPREME COURT OF LOUISIANA**

**NO. 2015-CJ-0585**

**JUSTIN HODGES**

**VERSUS**

**AMY HODGES**

**KNOLL, J., additionally concurring.**

I fully concur with the majority opinion in this case. I write separately to address some of the charges leveled by the dissent and to underscore the soundness of the majority's comprehensive interpretation of the term "domiciliary parent"—a concept that is unique to our civil law tradition. We granted writ of certiorari in this case to answer a simple and straightforward question—does Louisiana law permit a court to designate "co-domiciliary parents" in a child custody matter? Louisiana Revised Statute 9:335 provides a simple and straightforward answer: "***The domiciliary parent*** is the parent with whom the child shall primarily reside, but ***the other parent*** shall have physical custody during time periods that assure that the child has frequent and continuing contact with both parents."[1] The statute refers to "***the*** domiciliary parent" and "***the other parent***." It clearly does not contemplate "co-domiciliary parents." The word "co-domiciliary" does not appear anywhere in the Revised Statutes or the Civil Code. Nevertheless, the dissent seeks to impose this "co-domiciliary" designation in some perceived interest of fairness to both parents, despite clear legislative direction to the contrary. Words have meaning, and clear statutory language *should* have the force of law. Because there is no basis in Louisiana law, in legal scholarship, in public policy, or in logic for

---

[1] La. Rev. Stat. 9:335(B)(2) (emphasis added).

the position that a court has the discretion to designate "co-domiciliary parents," I concur with the majority opinion in every respect.

La. R.S. 9:335 provides, as follows:

A. (1) In a proceeding in which joint custody is decreed, the court shall render a joint custody implementation order except for good cause shown.
    (2)(a) The implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents.
        (b) To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally.
    (3) The implementation order shall allocate the legal authority and responsibility of the parents.
B. (1) In a decree of joint custody the court shall designate a domiciliary parent except when there is an implementation order to the contrary or for other good cause shown.
    (2) The domiciliary parent is the parent with whom the child shall primarily reside, but the other parent shall have physical custody during time periods that assure that the child has frequent and continuing contact with both parents.
    (3) The domiciliary parent shall have authority to make all decisions affecting the child unless an implementation order provides otherwise. All major decisions made by the domiciliary parent concerning the child shall be subject to review by the court upon motion of the other parent. It shall be presumed that all major decisions made by the domiciliary parent are in the best interest of the child.
C. If a domiciliary parent is not designated in the joint custody decree and an implementation order does not provide otherwise, joint custody confers upon the parents the same rights and responsibilities as are conferred on them by the provisions of Title VII of Book I of the Civil Code.

This statute addresses two different concepts—joint custody and the designation of a "domiciliary parent." As the majority opinion acknowledges, joint custody has two elements—physical custody and legal custody.[2] As we explained in *Evans v. Lungrin*,

The term "custody" is usually broken down into two components: *physical* or "actual" *custody* and *legal custody*. The typical joint custody plan will allocate time periods for *physical custody* between parents so as to promote a sharing of the care and custody of the child in such a way as to ensure the child of frequent and continuing contact with both parents. George D. Ernest, III, *Joint Custody and Parents' Liability Under Civil Code Article 23*18, 44 La. L.Rev. 1791 (1984).

---

[2] *Evans v. Lungrin*, 97-0541 (La. 2/6/98), 708 So.2d 731, 737.

*Legal custody*, by contrast, has previously been defined as "the right or authority of a parent or parents, to make decisions concerning the child's upbringing." *See* Ernest, *supra* note 5, at 1792.[3]

The dissent proceeds from the well-intentioned notion that this Court should provide trial judges with "every tool in the box" in cases where parents share custody of a child. Respectfully, the dissent fundamentally misunderstands Louisiana's child custody laws if it believes that it is necessary for a court to use the term "co-domiciliary parents" in order to provide both parents with *shared* legal **and** physical custody. Although Revised Statute 9:335(B)(1) provides that "[i]n a decree of joint custody the court *shall* designate a domiciliary parent," the Legislature provided two exceptions to this mandate—that is, (1) "when there is an ***implementation order*** to the contrary" or (2) "for other good cause shown." (emphasis added). In other words, while Revised Statute 9:335(B)(1) provides a preference for the designation of "***a*** domiciliary parent," a court could choose not to designate a domiciliary parent at all and, instead, to allocate authority by means of an ***implementation order***. Indeed, according to Louisiana Revised Statute 9:335(A)(1), (A)(2)(a), and (A)(3), when joint custody is decreed and in the absence of "good cause shown," a <u>joint custody implementation order</u> "shall allocate the time periods during which each parent has ***physical custody*** of the child"[4] ***and*** "shall allocate the ***legal authority and responsibility*** of the parents."[5] In short, the Legislature envisioned the joint custody implementation order allocating ***both*** <u>physical</u> and <u>legal custody</u>. The ability to allocate custody by means of a joint custody implementation order empowers the court to craft a custody arrangement on a case by case basis that works to further "the best interest of the child."

Because the trial court already has the power to allocate physical custody

---

[3] *Id.*
[4] La. Rev. Stat. 9:335(A)(2)(a) (emphasis added).
[5] La. Rev. Stat. 9:335(A)(3) (emphasis added).

and legal authority in this way, the dissent's interpretation of Revised Statue 9:335 does not add any implements to the trial court's judicial "tool box." It simply demeans the Legislature's preferred "tool." Indeed, the plain language of this statute manifests the Legislature's clear intent to establish a custodial system in which a child has a *sole domiciliary parent* and no more. While the statute contemplates that the joint implementation order "shall allocate the time periods during which *each parent* shall have physical custody of the child,"[6] the statute provides that "[i]n a decree of joint custody the court shall designate *a domiciliary parent* except when there is an implementation order to the contrary or for other good cause shown."[7] The text is clear. While *each parent* can share physical custody, the court *shall* designate *a* single domiciliary parent.

Justin Hodges argues that these exceptions for "when there is an implementation order to the contrary or for other good cause shown" suggest that a court could designate "co-domiciliary parents" if it provided for such a designation in the "implementation order" or "for other good cause shown." Although the statute does express the Legislature's preference for the designation of a *sole domiciliary parent*, the exception provides the court with the discretion to craft an implementation order that allocates physical and legal custody between the parents. It plainly does not authorize a court to designate "co-domiciliary parents" because that would render meaningless the Legislature's description of the term "domiciliary parent" in Revised Statute 9:335(B)(2): "The *domiciliary parent* is the parent with whom the child shall primarily reside, but *the other parent* shall have physical custody during time periods that assure that the child has frequent and continuing contact with both parents." (emphasis added). This description leaves no room for Justin Hodges' interpretation of Revised Statute 9:335. The text contemplates a "domiciliary parent" and "the other parent." There is nothing in the

---

[6] La. Rev. Stat. 9:335(A)(2)(a).
[7] La. Rev. Stat. 9:335(B)(1) (emphasis added).

4

text of the statute that supports the position that a child could have "co-domiciliary parents" under Louisiana law.

Amy Hodges' argument that Revised Statute 9:335 only provides for a child to have a **sole domiciliary parent** is supported by language from surrounding statutes. Indeed, Revised Statute 9:315.8, which deals with the calculation of the total child support obligation, refers concomitantly to the "domiciliary" party and the "nondomiciliary" party: "The **party without legal custody or nondomiciliary party** shall owe his or her total child support obligation as a money judgment of child support to the **custodial or domiciliary party**…."[8] Even in the context of **joint custody**, the statute only contemplates a "domiciliary" party and a "nondomiciliary" party: "In cases of joint custody, the court shall consider the period of time spent by the child with the **nondomiciliary party** as a basis for adjustment to the amount of child support to be paid during that period of time."[9] Notably, when defining "joint custody," this statute provides, "'Joint Custody' means a joint custody order that is **not shared custody** as defined in R.S. 9:315.9." (emphasis added). Revised Statute 9:315.9 goes on to define "shared custody" as a "joint custody order in which each parent has **physical custody** of the child for an approximately equal amount of time." (emphasis added). Granted, the statute does not address **legal custody** but, interestingly, the only mention of "domiciliary parent" in this statute suggests that, rather than designating "co-domiciliary parents" in such an arrangement, a court would simply not designate a domiciliary parent at all:

> The parent owing the greater amount of child support shall owe to the other parent the difference between the two amounts as a child support obligation. The amount owed shall not be higher than the amount which that parent would have owed **if he or she were a domiciliary parent**.[10]

---

[8] La. Rev. Stat. 9:315.8(D) (emphasis added).
[9] La. Rev. Stat. 9:315.8(E)(1) (emphasis added).
[10] La. Rev. Stat. 9:315.9 (A)(7) (emphasis added).

In response to this clear indication that the Legislature contemplated situations when *no domiciliary parent* would be designated, the dissent argues:

> [T]he other alternative allowed by the majority opinion - of naming no domiciliary parent - also results in one parent, the father, having a greater share of the legal authority over the child than the other parent, the mother, pursuant to LSA-R.S. 9:335(C) ("If a domiciliary parent is not designated in the joint custody decree and an implementation order does not provide otherwise, joint custody confers upon the parents the same rights and responsibilities as are conferred on them by the provisions of Title VII of Book I of the Civil Code."). Contained within Title VII of Book I of the Civil Code is Civil Code Article 216, which, on the issue of parental authority, provides in pertinent part that "[i]n case of difference between the parents, the authority of the father prevails." Therefore, if any matter subject to the decision-making authority of the parents is inadvertently omitted from the custody order and a dispute on such an issue thereafter arises between the parents, Article 216 directs that "the authority of the father prevails." Clearly, if Article 216 is triggered by such an eventuality, the mother would be deprived of the desired equal legal authority over the minor child.

This charge—that the Court's decision will disadvantage mothers in cases in which the trial court does not designate a domiciliary parent—is without merit. Louisiana Civil Code Article 216, to which the dissent refers, has been repealed, effective January 1, 2016. The new version of the article—Senate Bill 134 of the 2015 Regular Session, enacted as Act 260 of 2015—will now provide, as follows: "The father and the mother who are married to each other have parental authority over their minor child during the marriage."

Moreover, there is no civilian legal scholarship that supports the position that a court could designate "co-domiciliary parents." As the Court acknowledges, Katherine Spaht, the foremost scholar in this area, has referred to the term "co-domiciliary parents" as "oxymoronic." Commenting on Revised Statute 9:315.10 which provides for "split custody," Professor Spaht wrote:

> The section first defines the term "split" custody as a situation in which "each party is the sole custodial or domiciliary parent of at least one child to whom support is due." The use of "domiciliary" parent in the definition of split custody assumes that there is a true domiciliary parent, defined as the parent with whom the child primarily resides, not the oxymoronic "co-domiciliary parents." The calculation for split

custody should only apply in instances where each child resides primarily or exclusively with one parent.[11]

Addressing specifically the statute that is at issue in the case before us, Professor Spaht remarked:

> La. R.S. 9:335(B) provides for the designation of a domiciliary parent in a joint custody order which fails to include an implementation plan as described in Paragraph A. The domiciliary parent is defined as "the parent with whom the child primarily resides." Most joint custody orders designate a domiciliary parent and Paragraph B governs who exercises legal and physical custody of the child. By definition, however, there can be only one domiciliary parent-the parent with whom the child primarily resides. The designation of co-domiciliary parents creates an oxymoron.[12]

Professor Spaht's objection to this term is grounded in the plain language of the statute and in her unparalleled understanding of our unique child custody system in Louisiana. Section 9:335 defines "domiciliary parent" as "*the* parent with whom the child primarily resides." It *cannot* bear the unnecessary attempt to allow for *two* "domiciliaries" when the Legislature has only provided for *one*.

The civilian concept of the "domiciliary parent" is unique in that it provides a default rule that, at least in the abstract, should lead to less litigation. If the "domiciliary parent" has the authority "to make all decisions affecting the child" with all "major decisions" presumed to be in the best interest of the child, then the "other parent" is highly incentivized to be cooperative with the "domiciliary parent."[13] By placing power firmly, but not inextricably, in the hands of one party, the parties really are incentivized to work together more than they would be if they operated on equal footing. Nevertheless, what Justin Hodges should be advocating for is a joint implementation order that provides him and Amy Hodges with *shared* physical *and* legal custody. It would provide him with the authority that he wants without robbing the word "domiciliary parent" of its meaning.

The dispute that the Court's decision correctly resolves today involves much

---

[11] Katherine Shaw Spaht, The Two "Ics" of the 2001 Louisiana Child Support Guidelines: Economics and Politics, 62 La. L. Rev. 709, 731 (2002).
[12] *Id.* at 728 n. 73.
[13] *See* La. Rev. Stat. 9:335(B)(3).

more than mere semantics. While the common law majority preference is for *shared* physical *and* legal custody, the Louisiana Legislature has expressed a reasoned preference for a *single* domiciliary parent. The interpretation of Revised Statute 9:335 advocated by the dissent would change the orientation of Louisiana child custody law. As a policy matter, well-intentioned people could disagree as to whether or not a move toward the common law majority preference for *shared* physical *and* legal custody is a good thing. However, if Louisiana law is to take such a major step, it is one that is properly taken by the Legislature and not by judicial fiat. The Court's decision in this case is merely a reflection of its duty to give effect to the clear dictates of the law. We have no authority to legislate from the bench nor should we attempt to do so.

SUPREME COURT OF LOUISIANA

NO. 2015-CJ-0585

JUSTIN HODGES

VERSUS

AMY HODGES

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIRST CIRCUIT, PARISH OF LIVINGSTON

**HUGHES, J., dissenting.**

I respectfully dissent from the majority opinion, holding that LSA-R.S. 9:335 does not allow a district court to designate both parents in a child custody matter as "co-domiciliary parents."

The trial judge in the instant case was presented with testimony demonstrating that prior to trial the parents had been sharing equal physical custody of their minor child, M.H., and the parents had been making all decisions regarding the child jointly. No testimony was presented to indicate that any disagreements had occurred between the parents on these issues. The mother nevertheless sought to be named the sole domiciliary parent, contending that she would be better qualified than the father, due to her more advanced formal education, to make decisions regarding two-year-old M.H.'s future education. After a hearing, the trial judge denied the mother's request and directed the parties to continue to consult with one another as to decisions affecting the child, as "co-domiciliary parents," and should any disagreement arise, the parties could return to court. In so ruling, the trial judge based his decision on the facts and circumstances with which he was presented on the date of trial.

The record does not demonstrate that the trial judge was manifestly erroneous in his factual findings; therefore, the only issue before this court is whether LSA-R.S. 9:335 prohibits the designation of "co-domiciliary parents."

The operative provision of LSA-R.S. 9:335 is Paragraph (B)(1), which states: "In a decree of joint custody the court shall designate *a domiciliary parent* except when there is an implementation order to the contrary or for other good cause shown." (Emphasis added.)

In this case there was an implementation order to the contrary, which directed that the parents equally share the physical custody and the legal custody of M.H., making each parent a domiciliary parent - hence the denomination of "co-domiciliary parents."

In ruling that LSA-R.S. 9:335 does not allow for the designation of "co-domiciliary parents," the majority opinion relies on the use of the singular articles "a" or "the" before "domiciliary parent" in LSA-R.S. 9:335, as well as LSA-R.S. 9:335(B)(2) ("The domiciliary parent is the parent with whom the child shall primarily reside, but the other parent shall have physical custody during time periods that assure that the child has frequent and continuing contact with both parents.") and LSA-R.S. 9:335(C) ("If a domiciliary parent is not designated . . ."). Based on these provisions, the majority concludes that there are only two alternatives available to a court when the designation of a domiciliary parent is sought:  (1) to designate only one parent as the domiciliary parent; or (2) to designate no domiciliary parent.

However, the majority opinion fails to adequately take into account LSA-C.C. art. 3506 ("Whenever the terms of law, employed in this Code, have not been particularly defined therein, they shall be understood as follows: . . . The singular is often employed to designate several persons or things: the heir, for example, means the heirs, where there are more than one.") and LSA-R.S. 1:7 ("Words used in the singular number include the plural and the plural includes the singular.").

This court has consistently applied LSA-R.S. 1:7 to statutory provisions to read singular statutory terms as plural and plural statutory terms as singular.  See

**State v. Oelmann**, 12-0507 (La. 4/27/12), 85 So.3d 1281 (citing LSA-R.S. 1:7, this court summarily reversed the court of appeal's ruling that LSA-R.S. 13:587.2, which provided that the 4th Judicial District Court could assign certain "divisions" of the court as "a criminal section," did not allow a single "division" to be assigned as "a criminal section"); **St. Martin v. State**, 09-0935 (La. 12/1/09), 25 So.3d 736, 739 n.4 (citing LSA-R.S. 1:7, this court rejected as "untenable" the respondent's contention that use of the singular term "taxpayer," in Title 47 tax legislation, did not encompass a class of multiple "taxpayers"); **State v. Shaw**, 06-2467 (La. 11/27/07), 969 So.2d 1233, 1243 n.6 (citing LSA-R.S. 1:7, this court concluded that the use of the singular phrase "any subsequent felony" did not indicate a legislative intent to prohibit the enhancement of multiple sentences for multiple felony convictions on the same date for a single course of conduct, under the Habitual Offender Law, LSA-R.S. 15:529.1); **Fontenot v. Reddell Vidrine Water District**, 02-0439 (La. 1/14/03), 836 So.2d 14, 23 (citing LSA-R.S. 1:7, this court held that the use of the singular phrase "a penalty," authorized in workers' compensation cases by LSA-R.S. 23:1201(F), did not preclude multiple penalties for multiple violations for the failure to timely pay workers' compensation and/or medical benefits claims); **State v. Williams**, 480 So.2d 721, 726 n.10 (La. 1985) (citing LSA-R.S. 1:7, this court concluded that use of the singular term "act" in LSA-R.S. 14:10(1)'s phrase "his act or failure to act" did not limit the meaning of the phrase to a single body movement).

Applying LSA-C.C. art. 3506 and LSA-R.S. 1:7 to LSA-R.S. 9:335 allows the singular word "parent" in the phrase "domiciliary parent" to be read as "domiciliary parents." Thus, a court has the authority to name domiciliary "parents" in a shared custody situation, when the court deems the naming of both parents as "domiciliary parents" to be in the best interest of the child.

Despite the explicit applicability of LSA-R.S. 1:7 ("Words used in the

3

singular number include the plural and the plural includes the singular.") to LSA-R.S. 9:335's phrase "domiciliary parent," the majority opinion cavalierly sweeps aside the dictates of LSA-R.S. 1:7, stating that the "rule does not necessarily hold true for specialized terms in the law." The only legal authorities cited by the majority for excepting LSA-R.S. 9:335 from the application of LSA-R.S. 1:7 are LSA-C.C. art. 11 ("Words of art and technical terms must be given their technical meaning when the law involves a technical matter.") and LSA-R.S. 1:3 ("Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning").

Nonetheless, resort to the principles stated in LSA-C.C. art. 11 and LSA-R.S. 1:3 is unnecessary in this case since the term "domiciliary parent" is defined in the statute (pursuant to LSA-R.S. 9:335(B)(2), the "domiciliary parent is the parent with whom the child shall primarily reside"). The provisions of LSA-C.C. art. 11 and LSA-R.S. 1:3 become relevant only when the words used in a law may have different meanings. See **Lockett v. State, Department of Transportation & Development**, 03-1767 (La. 2/25/04), 869 So. 2d 87, 91 ("When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law, and the words of law must be given their generally prevailing meaning.").

There is no question as to the meaning of "domiciliary parent" in this case, as LSA-R.S. 9:335(B)(2) expressly states that the "domiciliary parent" is "the parent with whom the child shall primarily reside." The only question presented is whether both parents may be named as domiciliary parents.

This court has held that legislative language will be interpreted on the

4

assumption that the legislature was aware of existing statutes, *rules of construction*, and judicial decisions interpreting those statutes. See **M.J. Farms, Ltd. v. Exxon Mobil Corporation**, 07-2371 (La. 7/1/08), 998 So. 2d 16, 27; **Fontenot v. Reddell Vidrine Water District**, 02-0439 (La. 1/14/03), 836 So. 2d 14, 24. Therefore, in enacting LSA-R.S. 9:335, the legislature was aware of the effect dictated by LSA-R.S. 1:7 and, if the legislature intended that LSA-R.S. 1:7 should not apply to LSA-R.S. 9:335, it could have expressly indicated in LSA-R.S. 9:335 that only one parent could be named a domiciliary parent; failing which, "domiciliary parent" may be read as "domiciliary parents" pursuant to LSA-R.S. 1:7. See also LSA-C.C. art. 3506.[1]

The majority further states that, because LSA-R.S. 9:335 involves a "specialized area of the law," LSA-R.S. 1:7 is inapplicable; however, this statement is belied by the jurisprudence of this court, cited hereinabove, which all applied LSA-R.S. 1:7 to the statutory provisions at issue in therein even though the cases involved specialized areas of the law (**Martin v. State** construed tax law, **Fontenot v. Reddell Vidrine Water District** construed workers' compensation law, and **State v. Oelmann**, **State v. Shaw**, and **State v. Williams** construed criminal law - all specialized areas of the law).

The majority also holds that the definition provided in LSA-R.S. 9:335(B)(2) - that the "domiciliary parent is the parent with whom the child shall primarily reside " - "excludes the possibility of having more than one domiciliary parent." The majority reasons that it is "logically impossible" for both parents to meet this definition.

---

[1] Civil Code Article 3506 (applicable to Title 9 of the Revised Statutes, which contains Civil Code Ancillaries) specifically states that it is applicable "[w]henever the terms of law . . . have not been particularly defined" and then directing that "[t]he singular is often employed to designate several persons or things." Since LSA-R.S. 9:335(B) does not particularly define "domiciliary parent" as being only one parent, it may be considered as referencing more than one parent.

5

Yet, the concept of "shared custody" demonstrates that it is quite possible for a child to have a domicile with each parent. "Shared custody" is defined by LSA-R.S. 9:315.9 as "a joint custody order in which each parent has physical custody of the child for an ***approximately equal*** amount of time." (Emphasis added.)

Further, it is jurisprudentially and statutorily recognized that, in shared custody, two primary residences are established for the child, one with each parent (see **State in Interest of Travers v. Travers**, 28,022 (La. App. 2 Cir. 12/6/95), 665 So.2d 625, 628 ("Co-domiciliary parents, by definition, maintain two homes for their children.")), and, obviously, the maintenance of two residences for a child results in additional expenses to the parents. The additional expenses necessitated by the equal sharing of physical custody are incorporated into the calculation of the child support obligations by LSA-R.S. 9:315.9, which authorizes an increase in the applicable basic child support obligation set forth in LSA-R.S. 9:315.19, by directing that the applicable basic child support obligation "shall first be multiplied by one and one-half" and then allocated to the parents in proportion to their respective adjusted gross income. See LSA-R.S. 9:315.9(A)(2)-(A)(7); LSA-R.S. 9:20, Worksheet B. See also **Martello v. Martello**, 06-0594 (La. App. 1 Cir. 3/23/07), 960 So. 2d 186, 195 ("The [LSA-R.S. 9:315.9(A)] formula differs from the typical child support formula, in that it has a built-in adjustment for the duplication of costs that inevitably occurs in a shared custody arrangement . . . .").

When a child lives with married parents, he has one domicile[2] - that of his parents. When a child of parents, who do not live together, lives "primarily" (or "mostly") with only one parent, then the domicile of that parent is the domicile of

[2] See Domicile, **Black's Law Dictionary** (10th ed. 2014), defining "domicile" as "[t]he place at which a person has been physically present and that the person regards as home; a person's true, fixed, principal, and permanent home, to which that person intends to return and remain even though currently residing elsewhere"; and Domiciliary Parent, **Black's Law Dictionary** (10th ed. 2014), defining "domiciliary parent" as "[a] parent with whom a child lives."

the child, and that parent is the child's "domiciliary parent" as set forth in LSA-R.S. 9:335(B)(2). However, when, as in the instant case, the child is subject to a shared custody arrangement between his parents and resides for an equal amount of time with each parent, as set out in LSA-R.S. 9:315.9, he or she, in fact, has two domiciles - one with each parent. Thus, in a shared custody situation, when the parents agree, or a court finds, that the parents should also have equal legal authority over the child, the parents would, in fact, both be "domiciliary parents." To prohibit both parents from being designated as "domiciliary parents" or "co-domiciliary parents," when it is in the best interest of the child, merely because the authority to do so is not expressly set forth in LSA-R.S. 9:335 is to deny the reality of such a situation.[3]

As this court stated in **Evans v. Lungrin**, 97-0541 (La. 2/6/98), 708 So.2d 731, 737, child custody is comprised of both physical custody, which is actual custody, and legal custody, which is the right or authority to make decisions concerning the child's upbringing. Thus, joint legal custody involves a sharing of the responsibilities concerning the child including decisions about education, medical care, discipline and other matters relating to the upbringing of the child. **Id.** There has certainly been no suggestion that, when in the best interest of the child, a court is not authorized to order equal legal authority along with equal physical custody. Indeed, LSA-R.S. 9:335 directs that the court "allocate the legal

_____

[3] We note that the majority opinion adopts the view expressed by Katherine Shaw Spaht, in **The Two "ics" of the 2001 Louisiana Child Support Guidelines: Economics and Politics**, 62 La. L. Rev. 709, 771 n.73 (2002), that "[t]he designation of co-domiciliary parents creates an oxymoron." Notwithstanding, in order to be an "oxymoron," a term must be "a combination of contradictory or incongruous words," as defined in the Merriam-Webster Dictionary (see http://www.merriam-webster.com/dictionary/oxymoron). Certainly, in a situation in which a minor child does *not* spend an equal amount of time with each parent, there is no "shared" custody, and the naming of "co-domiciliary parents" would be inappropriate since the child would live "primarily" with only one parent. However, the pre-fix "co-" means "together." See http://www.merriam-webster.com/dictionary/co?show=1. Therefore, when the term "co-domiciliary parents" is applied in a shared custody and shared legal authority situation, it is not oxymoronic since the child has two domiciles and each parent exercises legal authority over the child as a domiciliary parent; therefore, such parents *are* co-domiciliary parents.

authority and responsibility of the parents" in the custody order.

However, naming one parent as the sole domiciliary parent places a greater share of the legal authority over the child with that domiciliary parent. See LSA-R.S. 9:335(B)(3) ("The domiciliary parent shall have authority to make all decisions affecting the child unless an implementation order provides otherwise. All major decisions made by the domiciliary parent concerning the child shall be subject to review by the court upon motion of the other parent. It shall be presumed that all major decisions made by the domiciliary parent are in the best interest of the child."). Further, the other alternative allowed by the majority opinion - of naming no domiciliary parent - also results in one parent, the father, having a greater share of the legal authority over the child than the other parent, the mother, pursuant to LSA-R.S. 9:335(C) ("If a domiciliary parent is not designated in the joint custody decree and an implementation order does not provide otherwise, joint custody confers upon the parents the same rights and responsibilities as are conferred on them by the provisions of Title VII of Book I of the Civil Code."). Contained within Title VII of Book I of the Civil Code is Civil Code Article 216, which, on the issue of parental authority, provides in pertinent part that "[i]n case of difference between the parents, the authority of the father prevails." Therefore, if any matter subject to the decision-making authority of the parents is inadvertently omitted from the custody order and a dispute on such an issue thereafter arises between the parents, Article 216 directs that "the authority of the father prevails." Clearly, if Article 216 is triggered by such an eventuality, the mother would be deprived of the desired equal legal authority over the minor child.

The majority further holds that the interpretation advanced by the appellate court in this case (that, in a co-domiciliary arrangement, the parent with whom the child is residing at the time would have decision-making authority during the time the child resides with the parent) would "invite second-guessing, discord, and

8

uncertainty for the child because major decisions could vacillate with each parent." (See Op. at pp. 8-9.) Nevertheless, a co-domiciliary designation would counteract, to an extent, the tendency that a parent might have to exercise parental authority in an irresponsible manner or without consulting with the other parent as required by LSA-R.S. 9:336 ("Joint custody obligates the parents to exchange information concerning the health, education, and welfare of the child and to confer with one another in exercising decision-making authority."), since a decision not concurred in by the other parent might simply be undone when physical custody of the child returned to the disagreeing, co-domiciliary parent. Thus, co-domiciliary parents have a greater incentive to work together to make decisions that are mutually agreeable, and the risk of "second-guessing, discord, and uncertainty for the child" is reduced. In contrast, a sole domiciliary parent has the larger temptation, in being vested with greater legal authority than the other parent pursuant to LSA-R.S. 9:335(B)(3) ("The domiciliary parent shall have authority to make all decisions affecting the child unless an implementation order provides otherwise. All major decisions made by the domiciliary parent concerning the child shall be subject to review by the court upon motion of the other parent. It shall be presumed that all major decisions made by the domiciliary parent are in the best interest of the child."), to subvert the obligation imposed by LSA-R.S. 9:336 to consult the non-domiciliary parent in exercising decision-making authority, given that a sole domiciliary parent's major decisions may only be challenged in court, and then such decisions are presumed to be in the best interest of the child.

As indicated hereinabove, the only method by which it can be assured that both parents have equal legal custody over their child is to designate both parents as domiciliary parents in a shared physical custody scenario. The district courts, as well as the First, Third, and Fifth Circuits, in numerous decisions, evidently have reached this conclusion, in generally finding that a "co-domiciliary" designation

9

conforms with LSA-R.S. 9:335. <u>See</u> **Hodges v. Hodges**, 14-1575 (La. App. 1 Cir. 3/6/15), 166 So.3d 348 (the instant case); **Distefano v. Distefano**, 14-1318 (La. App. 1 Cir. 1/22/15), 169 So.3d 437; **Centanni v. Spradley**, 13-1851, 2014WL1166192 (La. App. 1 Cir. 3/21/14) (unpublished); **McCaffery v. McCaffery**, 13-0692 (La. App. 5 Cir. 4/9/14), 140 So.3d 105, <u>writ denied</u>, 14-0981 (La. 6/13/14), 141 So.3d 273; **Galland v. Galland**, 12-1075 (La. App. 3 Cir. 3/20/13), 117 So.3d 105, <u>writ denied</u>, 15-0319 (La. 4/17/15), 168 So.3d 404; **St. Philip v. Montalbano**, 12-1090 (La. App. 4 Cir. 1/9/13), 108 So.3d 277, 279 n.3; **Stewart v. Stewart**, 11-1334 (La. App. 3 Cir. 3/7/12), 86 So.3d 148; **Silbernagel v. Silbernagel**, 10-0267 (La. App. 5 Cir. 5/10/11), 65 So.3d 724; **Schmidt v. Schmidt**, 08-0263 (La. App. 4 Cir. 2/11/09), 6 So.3d 197, <u>writ denied</u>, 09-0566 (La. 4/3/09), 6 So.3d 779; **Henry v. Henry**, 08-0689 (La. App. 1 Cir. 9/23/08), 995 So.2d 643; **Smith v. Smith**, 07-1163, 2008WL588906 (La. App. 3 Cir. 3/5/08) (unpublished), 977 So.2d 312 (table); **Craig v. Craig**, 42,363 (La. App. 2 Cir. 5/9/07), 956 So.2d 819, <u>writ denied</u>, 07-1349 (La. 7/27/07), 960 So.2d 64; **Elliott v. Elliott**, 05-0181 (La. App. 1 Cir. 5/11/05), 916 So.2d 221, <u>writ denied</u>, 05-1547 (La. 7/12/05), 905 So.2d 293; **Alexander v. Alexander**, 02-0683 (La. App. 3 Cir. 11/13/02), 831 So.2d 1060; **Lincecum v. Lincecum**, 01-1522 (La. App. 3 Cir. 3/6/02), 812 So.2d 795, 798; **Perkins v. Perkins**, 99-1130 (La. App. 1 Cir. 12/28/99), 747 So.2d 785, <u>writ granted</u>, 00-0269 (La. 2/16/00), 754 So.2d 950, <u>order recalled</u>, 00-0269 (La. 3/24/00), 758 So.2d 141 (per curiam); **Remson v. Remson**, 95-1951 (La. App. 1 Cir. 4/4/96), 672 So.2d 409.[4]

---

[4] <u>See also</u> **Szwak v. Szwak**, 49,938 (La. App. 2 Cir. 4/15/15), 163 So.3d 911; **Cole v. Cole**, 13-1442 (La. App. 3 Cir. 6/4/14), 139 So.3d 1225; **Koussanta v. Dozier**, 14-0059 (La. App. 5 Cir. 5/21/14), 142 So.3d 202; **Blanc v. Hill**, 13-1961, 2014WL1778354 (La. App. 1 Cir. 5/2/14) (unpublished); **Bond v. Bond**, 13-1733 (La. App. 1 Cir. 3/24/14) (unpublished), <u>writ denied</u>, 14-1054 (La. 9/12/14), 148 So.3d 932; **Pepiton v. Turner**, 13-1199 (La. App. 3 Cir. 3/5/14), 134 So.3d 160; **Bagwell v. Bagwell**, 48,913 (La. App. 2 Cir. 1/15/14), 132 So.3d 426, <u>writ denied</u>, 14-0356 (La. 3/14/14), 135 So.3d 608; **Bush v. Bush**, 13-0922 (La. App. 1 Cir. 12/27/13), 137 So.3d 49; **Harvey v. Harvey**, 13-0081 (La. App. 3 Cir. 6/5/13), 133 So.3d 1, <u>writ denied</u>, 13-1600 (La. 7/22/13), 119 So.3d 596; **Manuel v. Bieber**, 12-1303, 2013WL832362 (La. App. 3 Cir. 3/6/13) (unpublished), 110 So.3d 293 (table); **Thibodeaux v. Thibodeaux**, 12-752 (La.

In contrast, the Second and Fourth Circuit Courts of Appeal have ruled in only three cases, summarily, that there is no authority in the law for the designation of "co-domiciliary parents": **Hanks v. Hanks**, 13-1442 (La. App. 4 Cir. 4/16/14), 140 So.3d 208; **Molony v. Harris**, 10-1316 (La. App. 4 Cir. 2/23/11), 60 So.3d 70; **Ketchum v. Ketchum**, 39,082 (La. App. 2 Cir. 9/1/04), 882 So.2d 631.

---

App. 3 Cir. 12/5/12), 104 So.3d 768; **Coleman v. Coleman**, 47,080 (La. App. 2 Cir. 2/29/12), 87 So.3d 246; **Hernandez v. Hernandez**, 11-0526 (La. App. 5 Cir. 12/28/11), 83 So.3d 168, writ denied, 12-0271 (La. 3/30/12), 85 So.3d 124; **Kingston v. Kingston**, 11-1629 (La. App. 1 Cir. 12/21/11), 80 So.3d 774; **Westbrook v. Weibel**, 11-0910 (La. App. 3 Cir. 12/7/11), 80 So.3d 683, writ denied, 12-0403 (La. 3/7/12), 83 So.3d 1048; **Bergeron v. Bergeron**, 10-0964, 2011WL1938668 (La. App. 1 Cir. 5/6/11) (unpublished), 66 So.3d 77 (table); **Vaughn v. Vaughn**, 10-2201, 2011WL1260050 (La. App. 1 Cir. 3/25/11) (unpublished), 58 So.3d 1156 (table), writ denied, 11-0806 (La. 5/27/11), 63 So.3d 1001; **Garcia v. Garcia**, 10-0446 (La. App. 3 Cir. 11/3/10), 49 So.3d 601; **Flint v. Lawton**, 10-0872, 2010WL4273096 (La. App. 1 Cir. 10/29/10) (unpublished), 56 So.3d 462 (table); **Harang v. Ponder**, 09-2182 (La. App. 1 Cir. 3/26/10), 36 So.3d 954, writ denied, 10-0926 (La. 5/19/10), 36 So.3d 219; **Rogers v. Grandberry**, 09-1507, 2010WL8972071 (La. App. 4 Cir. 3/17/10) (unpublished), 30 So.3d 1188 (table); **Hains v. Hains**, 09-1337 (La. App. 1 Cir. 3/10/10), 36 So.3d 289; **Semmes v. Semmes**, 45,006 (La. App. 2 Cir. 12/16/09), 27 So.3d 1024; **Rome v. Bruce**, 09-0155 (La. App. 5 Cir. 10/13/09), 27 So.3d 885; **Cradeur v. Cradeur**, 08-1463 (La. App. 3 Cir. 5/6/09), 10 So.3d 1252; **Schmidt v. Schmidt**, 08-0263 (La. App. 4 Cir. 2/11/09), 6 So.3d 197, writ denied, 09-0566 (La. 4/3/09), 6 So.3d 779; **Falcon v. Falcon**, 08-0925, 2008WL4191021 (La. App. 1 Cir. 9/12/08) (unpublished), 992 So.2d 592 (table); **Chuter v. Hollensworth**, 08-0224, 2008WL2065063 (La. App. 1 Cir. 5/2/08) (unpublished); **Hymel v. Guarisco**, 06-1857, 2007WL4644813 (La. App. 1 Cir. 12/28/07) (unpublished), 972 So.2d 493 (table), writ denied, 08-0979 (La. 8/29/08), 989 So.2d 101; **S.J.G. v. A.A.G.**, 07-0625 (La. App. 1 Cir. 9/19/07), 970 So.2d 1022; **Laurence v. Laurence**, 07-0011 (La. App. 3 Cir. 5/30/07), 957 So.2d 931, writ denied, 07-1322 (La. 7/5/07), 959 So. 2d 891; **State in the Interest of S.L. v. Lewis**, 41,835, 2007WL987283 (La. App. 2 Cir. 4/4/07) (unpublished); **Cerwonka v. Baker**, 06-0856 (La. App. 3 Cir. 11/2/06), 942 So.2d 747; **Bihm v. Bihm**, 05-1550 (La. App. 3 Cir. 5/31/06), 932 So.2d 732, writ denied, 06-1695 (La. 10/6/06), 938 So.2d 81; **Luplow v. Luplow**, 41,021 (La. App. 2 Cir. 2/28/06), 924 So.2d 1135; **Watson v. Watson**, 39,458 (La. App. 2 Cir. 3/2/05), 894 So.2d 1263; **In re Morris**, 39,523 (La. App. 2 Cir. 1/26/05), 892 So.2d 739; **Borne v. Sutton**, 04-0826 (La. App. 5 Cir. 12/28/04), 892 So.2d 128; **Liles v. Liles**, 37,251 (La. App. 2 Cir. 6/25/03), 850 So.2d 879; **Arbuckle v. Arbuckle**, 36,616 (La. App. 2 Cir. 12/11/02), 833 So.2d 1119; **Collins v. Collins**, 36,629 (La. App. 2 Cir. 10/23/02), 830 So.2d 448; **McMahon v. McMahon**, 02-0211 (La. App. 5 Cir. 9/30/02), 829 So.2d 584; **Age v. Age**, 01-0231 (La. App. 4 Cir. 5/29/02), 820 So.2d 1167; **Swan v. Swan**, 35,393 (La. App. 2 Cir. 12/7/01), 803 So.2d 372; **Smith v. Smith**, 00-1686 (La. App. 4 Cir. 4/11/01), 785 So.2d 223; **Curtis v. Curtis**, 34,317 (La. App. 2 Cir. 11/1/00), 773 So.2d 185; **Tatum v. Tatum**, 33,118 (La. App. 2 Cir. 5/15/00), 794 So.2d 854; **Kulbeth v. Kulbeth**, 99-1785 (La. App. 3 Cir. 4/5/00), 758 So.2d 969; **Edwards v. Edwards**, 99-994 (La. App. 3 Cir. 12/22/99), 755 So.2d 331; **Jones v. Jones**, 99-0035 (La. App. 3 Cir. 7/14/99), 747 So.2d 94; **Constance v. Traill**, 98-2758 (La. App. 4 Cir. 4/28/99), 736 So.2d 971; **Falterman v. Falterman**, 97-0192 (La. App. 3 Cir. 10/8/97), 702 So.2d 781, writ not considered, 98-0076 (La. 3/13/98), 712 So.2d 863; **Havener v. Havener**, 29,785 (La. App. 2 Cir. 8/20/97), 700 So.2d 533; **State in Interest of Travers v. Travers**, 28,022 (La. App. 2 Cir. 12/6/95), 665 So.2d 625; Robert Lowe, 1 La. Prac. Series, "Divorce" § 4:33 (in setting forth a sample form for a matrimonial agreement to establish a separate property regime, the following provision was suggested: "[Party 1] and [Party 2] agree that in the event that children are born of their marriage, that, in the event of a breakup of the marriage, the custody of any child(ren) shall be 'Joint Custody' with the child(ren) spending equal time with each parent on an alternating basis, and, moreover, *each parent shall be designated a 'co-domiciliary parent'* with equal rights, responsibilities, and authorities concerning the child(ren). The parties acknowledge that they have carefully and thoughtfully considered this provision and do now objectively declare that this agreement will be in the children's best interest." (Emphasis added.)).

Given the fact that the designation of "co-domiciliary parents" has been deemed necessary to accomplish an equality of legal custody between parents by the great weight of jurisprudence, it hardly seems appropriate, as the majority opinion does out-of-hand, to declare that

> [T]he plain language of La. R.S. 9:335 manifests the legislature's clear intent to establish a custodial system in which a child has a domiciliary parent and no more than one such parent. The text is clear. Although each parent can share physical custody, the court can only designate a single domiciliary parent.

(See Op. at p.9.) It would seem that the effect of LSA-R.S. 9:335(B) is *not* clear to a great many of those charged with interpreting it. While the meaning of "domiciliary parent" is set forth in LSA-R.S. 9:335(B) as "the parent with whom the child shall primarily reside," what is not clear is whether or how to designate a "domiciliary parent" when a child does not reside "primarily" or "mostly" with either parent, but rather lives an equal amount of time with each.

When the language of a law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. See LSA-C.C. art. 10. When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. LSA-C.C. art. 12. Laws on the same subject matter must be interpreted in reference to each other. LSA-C.C. art. 13. Under the rules of statutory construction, courts have a duty in the interpretation of a statute to adopt a construction which harmonizes and reconciles it with other provisions dealing with the same subject matter. See **City of New Orleans v. Louisiana Assessors' Retirement & Relief Fund**, 05-2548 (La. 10/1/07), 986 So. 2d 1, 15.

The purpose of laws pertaining to child custody is to ensure that an award of child custody is in the best interest of the child. See LSA-C.C. art. 131 ("In a proceeding for divorce or thereafter, the court shall award custody of a child in accordance with the best interest of the child."). See also **C.M.J. v. L.M.C.**, 14-

12

1119 (La. 10/15/14), 156 So.3d 16, 28-29 (stating that the best interest of the child is the sole criterion to be met in making a custody award; it is the child's emotional, physical, material and social well-being, and health that are the judge's very purpose in child custody cases, and the judge must protect the child from the harsh realities of the parents' often bitter, vengeful, and typically highly emotional conflict).

An important factor in determining the best interest of the child, as listed in LSA-C.C. art. 134(12), is "[t]he responsibility for the care and rearing of the child previously exercised by each party." See also **Johnston v. McCullough**, 410 So.2d 1105, 1107-08 (La. 1982) ("Stability and continuity must be considered in determining what is in the best interest of the child."); **Bordelon v. Bordelon**, 390 So.2d 1325, 1329 (La. 1980) ("[S]tability of environment . . . is still relevant to a determination of the best interest of the child."); **Colvin v. Colvin**, 40,518 (La. App. 2 Cir. 10/26/05), 914 So.2d 662, 666 ("Continuity and stability of environment are important factors to consider in determining what is in the child's best interest. A change from a stable environment should not be made absent a compelling reason.").

In the instant case, the trial court attempted to maintain continuity for M.H. by continuing in effect the "responsibility for the care and rearing of the child previously exercised by each part[ies]" (pursuant to LSA-C.C. art. 134(12)), which was an equal sharing of physical custody and legal authority as to M.H. The court advised the parties, in open court: "If you aren't able to . . . work out a plan that works for [M.H.] when he becomes school age, the court will be happy to hear from you again and see how things are going." In so stating, the trial court referenced duties legally imposed by LSA-R.S. 9:336 on parents who share joint custody of a child "to exchange information concerning the health, education, and welfare of the child and to confer with one another in exercising decision-making

authority."

The trial court ordered that the parties in this case actually share equal physical custody of their child, by exchanging the physical custody of the child, M.H., every week on Wednesday,[5] and the trial court implicitly concluded that it was in the best interest of M.H. that both parents be designated as domiciliary parents.

In child custody cases, the decision of the trial court is to be given great weight and overturned only where there is a clear abuse of discretion. See **C.M.J. v. L.M.C.**, 156 So.3d at 28-29; **Gathen v. Gathen**, 10-2312 (La. 5/10/11), 66 So.3d 1, 8 n.4; **Thompson v. Thompson**, 532 So.2d 101, 101 (La. 1988) (per curiam); **Stephenson v. Stephenson**, 404 So.2d 963, 966 (La. 1981); **Fulco v. Fulco**, 259 La. 1122, 1129, 254 So.2d 603, 605 (1971). See also LSA-C.C. art. 134, 1993 Revision Comment (b) ("The appellate courts have reiterated the traditional rule that a trial court's custody award will not be disturbed absent a manifest abuse of discretion . . . . This revision does not change that rule."). The record does not support a conclusion that the trial judge abused his discretion in the custody judgment issued in this case.

This court has previously recognized in **SWAT 24 Shreveport Bossier, Inc. v. Bond**, 00-1695 (La. 6/29/01), 808 So. 2d 294, 302, that the object of the court in construing a statute is to ascertain the legislative intent and, where a literal interpretation would produce absurd consequences, the letter must give way to the spirit of the law and the statute construed so as to produce a reasonable result.

The failure of the majority opinion to apply LSA-R.S. 1:7 to LSA-R.S.

---

[5] See **Janney v. Janney**, 05-0507 (La. App. 1 Cir. 7/26/06), 943 So. 2d 396, 399-400, writ denied, 06-2144 (La. 11/17/06), 942 So. 2d 536 (recognizing that in determining whether a particular arrangement constitutes "shared custody," pursuant to LSA-R.S. 9:315.9, the court may find such an arrangement when the physical custody is split as equally as possible, but through inevitable fluctuations, such as may occur when holidays are divided or alternated, the actual number of days of physical custody in a given year is not exactly equal).

9:335's phrase "domiciliary parent," so that it might be read where appropriate in the plural as "domiciliary parents," produces the absurd result of depriving parents, who may wish to be designated "co-domiciliary parents" via consent agreements, and trial judges, who might otherwise find it in the best interest of a child to have his parents designated "co-domiciliary parents" in a shared physical custody situations, of the ability to fully implement shared legal custody.

In this case the trial judge very specifically addressed the fact that the matter might have to be revisited when the child reached school age. The parties are not fighting over any issue of substance, such as the amount of child support or the amount of time the child spends with each parent. The only point of contention that brings the matter to this court is the label of co-domiciliary parent. It seems the mother, despite all particulars of the child's care having been resolved, wants control of the situation now, rather than when the child reaches school age, which indicates she might not be able to foster the relationship between child and father. The trial court will now be forced to make a premature, unnecessary decision or name neither parent as domiciliary.

Those who have made decisions in family court know that every tool in the box is often needed to make both parents invested in the result and working together for the best interest of the child. It simply makes no sense to deprive trial judges of this tool when it has been used so successfully as shown by the number of cases cited above.