892 So.2d 739 (2005)
In re Shad Adam MORRIS Applying for Intrafamily Adoption.
No. 39,523-JAC.
Court of Appeal of Louisiana, Second Circuit.
January 26, 2005.
*740 Julie C. Jones, for Plaintiff Appellant Shad Adam Morris.
Robert E. Bethard, Coushatta, for Plaintiff Appellee Danny Wayne Goodwin, Jr.
McKeithen Law Office by Anita D. McKeithen, Shreveport, for Defendant Appellee Danny Wayne Goodwin, Sr.
Before STEWART, GASKINS and LOLLEY, JJ.
STEWART, J.
This is an appeal by a stepfather from a judgment denying his petition for an intrafamily adoption. Upon finding that a traumatic event impacted the parent-child relationship, the trial judge determined that cutting all ties between the biological father and the child would not be in the child's best interests. The stepfather argues that the trial judge erred in failing to find that the biological father's consent was not required for the adoption and in determining that adoption was not in the child's best interests. Because the trial judge has great discretion in determining whether adoption is in the child's best interests and because the facts of this matter present a difficult decision about which reasonable minds could differ, we find that the trial judge did not abuse his discretion in denying the adoption, and we affirm.

*741 FACTS
The parents of the child, who was born in 1995, divorced on March 3, 2000. The judgment provided for joint custody of the child, named the mother and father co-domiciliary parents, and designated the father's home as the primary residence of the child. The mother married the stepfather petitioner on March 4, 2000. At first, the parents shared custody of the child on an equal basis. However, in August 2002, the child began attending a private school near his mother's home in Coushatta and living with his mother and stepfather. The father did not object to this change. Since the mother wanted the child back home on Saturday to be ready to attend church services on Sunday, this new arrangement limited the father's time with the child to Friday night visitations.
The situation deteriorated during Thanksgiving of 2002, when the child, who was seven years old, told his mother that he had been molested by a cousin during visits with his father in Shreveport. When informed of what had occurred, the father became very upset. After hearing that his child had been molested, the father did not have contact with his child again until February 2003. He has neither visited nor called the child since then. We note that the father's family had difficulty believing that the child had been molested by a cousin and initially thought that it was a figment of the child's imagination. However, the alleged molester, a cousin only a few years older than the child, later admitted to molesting the child.
The stepfather filed the petition for intrafamily adoption on July 14, 2004. He alleged that because the father had failed to communicate or visit with the child since February 2003, his consent was not required for the adoption. The father filed an objection, and the matter was heard on September 13, 2004.
At the hearing, the mother testified about the facts related above and about the child's relationships with his father and stepfather. She stated that the father's contact with the child had gradually slacked off prior to the time she found out about the molestation. She described the father's life as unstable. He had not worked since being involved in an accident on July 26, 2002, while riding bikes on a Friday evening with the child. He had dated a woman with a drinking problem in 2000, and then married another woman in May 2001 with whom he has had an unstable relationship. She also noted that he had used marijuana in the past.
The mother explained that during the year prior to when she found out about the molestation, the child did not want to go visit his father. She would have to pull over during driving the child to visits, because he would vomit. After finding out that the child had been molested while in his care, the father did not see his child until February 2003 when he visited the child twice in Coushatta and had one overnight visit. The mother related that during the overnight visit, the father took the child to a late movie and then left him in the vehicle while he went into someone's house.
The mother described a close and loving relationship between the child and the stepfather. The stepfather attended therapy with the child following the molestation. He is actively involved in the child's school. They spend a lot of time together, and the stepfather even brings the child with him to work when school is out. The family attends church regularly and spends Saturdays together as a family day. When asked how the stepfather treats her child, she stated, "Just like he's his dad." She also explained that the child asked three times to be adopted before they filed the petition for adoption.
*742 The stepfather also testified that the child wanted the adoption so that he could have the same last name as the rest of the family. The stepfather stated that he feels the child is as much his as anyone else's. He described the many things they do together, and he explained that he wants to teach the child the value of work. The stepfather related that the family has grown even closer since learning about the molestation. He attended therapy with the child as he felt the child needed a father  someone to stand beside him so that he would know that he was protected. The stepfather noted that he could continue the same relationship with the child even if the adoption is not granted. Finally, the stepfather stated that he liked the child's father and never had a problem with him.
In his testimony, the father admitted that he had used marijuana in the past when married to the mother, but he claimed that he no longer uses it. He testified that he has been unable to work since sustaining back injuries in the bicycle accident and that he takes a number of medications for pain. He has maintained health insurance covering the child, and he continues to pay the child's medical bills. Although currently married, he was unaware of his wife's whereabouts.
The father further testified that he had regular contact with his child until he found out about the molestation from the mother. He blamed himself for what happened. Although the mother did not blame him, he felt there was some animosity since the child had been in his care when the molestation occurred. He explained that the mother told him the child did not want to come to Shreveport anymore. He took this to mean that the child did not want to see him, so he stopped calling. The father noted that his family had difficulty accepting that the child had been molested by a young relative. Lastly, the father claimed that prior to the petition for intrafamily adoption being filed, he had spoken with an attorney about how to go about establishing contact with the child.
The father's mother also testified on his behalf. She stated that the adoption would be devastating for her son and that he very much wants to see his child. Although she mailed letters and cards to the child, she never tried to visit him even though she made numerous trips to Coushatta. She admitted that it was difficult at first to believe that the molestation had occurred as both children involved are her grandsons.
At the request of counsel for the stepfather, the trial judge ordered a drug test for the father. However, the trial judge did not take the results into consideration due to the likelihood of the father's prescribed medications affecting the outcome of the test.
After interviewing the child and listening to closing arguments, the trial judge denied the petition for intrafamily adoption. The trial judge noted that his decision would be easy if it were just a matter of determining who was to have custody of the child. However, he noted that the decision involved more than whether to let the child take a new name; it involved whether to forever terminate the relationship between a father and child. The trial judge recognized the positive relationship between the stepfather and the child. He also recognized problems with the father and the fact that his relationship with the child had not been all that it should have been. The trial judge believed that a "traumatic event" had impacted the relationship between the father and child, that the father blamed himself, and that the father had come to believe the child no longer wanted to see him. As such, the *743 trial judge determined that cutting the ties between the natural parent and the child would not be in the child's best interests and that a severing of ties in such circumstances was not intended by the adoption laws. Finally, the trial judge noted that the child's best interests would be served by his remaining with his mother and stepfather.
The stepfather appealed. He argues that the trial court erred in failing to find that the father's consent was not required for the adoption and in determining that adoption would not be in the child's best interests.

DISCUSSION
As provided by La. Ch. C. art. 1245, parental consent for an intrafamily adoption is not necessary in the following circumstances:
C. When the spouse of a stepparent petitioner has been granted sole or joint custody of the child by a court of competent jurisdiction or is otherwise exercising lawful custody of the child and any one of the following conditions exists:
(1) The other parent has refused or failed to comply with a court order of support without just cause for a period of at least six months.
(2) The other parent has refused or failed to visit, communicate, or attempt to communicate with the child without just cause for a period of at least six months.

(Emphasis added.) To find "just cause," a parent's failure to visit or communicate with his child must be due to factors beyond his control. In re RMK, 499 So.2d 190, 192 (La.App. 2d Cir.1986), and cases cited therein.
The stepfather argues that the trial court erred in failing to find that the father's consent was not required for the adoption. The father had neither visited nor communicated with the child for seventeen months as of the filing of the petition in July 2004. The stepfather asserts there was no just cause for the father's failure to communicate with the child and that the existence of a "traumatic event" does not constitute just cause as the father should have expended extra effort to maintain a relationship with his child during those months.
It is clear from the trial judge's reasons that he considered the molestation of the child to be a traumatic event that affected the relationship between the father and child. However, the trial judge did not make any specific finding that the father's consent was not required for the adoption. The reasons for judgment indicate that the trial judge based his ruling on the best interests of the child and denied the adoption upon determining that it would not be in the child's best interests. The Children's Code provides that the basic consideration in an intrafamily adoption shall be the best interests of the child. La. Ch. C. art. 1255(A). Regardless of whether parental consent is or is not required, the major standard used by the courts when determining whether to order an adoption is the best interests of the child. Adoption of Latiolais, 384 So.2d 377, 378 (La.1980); In re Leitch, 32,021 (La.App.2d Cir.3/31/99), 732 So.2d 632, 635; In re DWH, 457 So.2d 137, 139 (La.App. 2d Cir.1984). Therefore, even if the father's consent was not required due to his failure to visit or communicate with his child, that factor would not mandate reversal of the trial court's judgment. It is the child's best interests that is the paramount consideration, and it is the trial court's determination that adoption would not be in the child's best interests that is at the heart of this review.
*744 The stepfather also argues that the trial judge erred in the best interests determination. The stepfather asserts that the father did nothing to help the child after the molestation occurred and the father's family did not even initially believe that anything had occurred. In contrast, petitioner attended therapy with the child and became more involved in his life. The stepfather asserts that he has a strong bond with the child, whereas the father no longer has a relationship with the child. The stepfather also asserts that the instability in the father's life is further grounds for finding adoption to be in the child's best interests.
Whether an adoption is in a child's best interests must be decided on the unique facts of each case, and the trial judge is vested with vast discretion in making that determination. In re M.M.L., 469 So.2d 1065, 1068 (La.App. 2d Cir.1985). Because the trial court judge is in a better position to make the best interests determination, this court will ordinarily not second-guess such sensitive decisions. Id. However, the trial judge's discretion is not absolute, as the court's decision is subject to reversal if found to be manifestly erroneous or clearly wrong. In re R.W.T. Applying for Adoption of J.D., 594 So.2d 1383, 1387 (La.App. 2d Cir.1992).
The considerations to be taken into account when determining whether adoption is in the child's best interests have been explained by this court as follows:
In determining the best interest, the court needs to take into consideration that the legal consequences of adoption are abrupt, severe, and irrevocable: the relationship between the child and natural parent is severed. In making the determination, it is not enough to look at the love and home environment provided by the stepparent. The court should also consider the depth and closeness of the child's ties with the non-custodial natural parent and the effect the loss of this relationship would have on the child. Children have a right to know and love their parents, and should not be denied this right except when the parent has proven himself unworthy of their love.
In re Leitch, 732 So.2d at 635, italics removed and citations omitted.
The record establishes that the child enjoys a close, supportive, and loving relationship with his stepfather and that the child has the great benefit of a stable family home with his mother and stepfather. The record also establishes that the child's relationship with his father is practically nonexistent at this time. It appears that the relationship between the father and child has been declining ever since the child went to live with his mother in Coushatta and was limited to Friday night visits with his father. The fact that the child was molested by a cousin while in his father's care further strained the relationship. The record indicates that in the year prior to the mother learning what was happening, the child, understandably, did not want to visit his father. The record further indicates that the father blamed himself for what happened to the child while in his care. The trial court believed the father's assertion that he felt the child no longer wanted to see him and apparently determined that this was why the father ceased contact with the child.
While we are disturbed by the father's failure to have any contact with his child for such a long period, we cannot say that the trial court was manifestly erroneous in finding that the traumatic event of molestation was the factor that led to the breakdown in the relationship and in determining that, under these circumstances, adoption would not be in the child's best interests at this time. The devastating impact of the child being molested by a *745 cousin while in his father's care is not a factor to be disregarded in considering whether to permanently sever the parent/child relationship. The trial judge recognized this when he noted that in a perfect world such an event would not terminate the relationship. However, this is not a perfect world. The father certainly should have made efforts to remain in contact with his son even though he considered himself a bad parent because his child was molested while in his custody; however, there also appears to have been little done by the mother to foster a continuing relationship between her child and his father. The fact that the father has maintained the child's insurance and continues to pay medical expenses for the child is indicative of his continuing concern for his child and his awareness of his parental responsibilities.
The trial judge's reasons for judgment reflect his thorough consideration of the petitioner's request and the difficulty of the decision. On this record, we cannot say that the trial judge was either manifestly erroneous or clearly wrong to deny the adoption at this time. There is no showing that denying the adoption will in any way lessen the bond and the loving relationship that the child has developed with his stepfather. Moreover, the trial judge's decision affords the child the opportunity to develop a closer relationship with his father, while continuing to maintain the wonderful relationship he enjoys with his stepfather.

CONCLUSION
Accordingly, the judgment of the trial court is affirmed with costs assessed to appellant.
AFFIRMED.
GASKINS, J., concurs with reasons.
GASKINS, J., concurring.
I respectfully concur with the majority's opinion. Should the circumstances arise anew under La. Ch. C. art. 1245, which permits adoption without the father's consent, the stepfather may again petition the court for an intrafamily adoption and set forth evidence for a reevaluation of the best interest of the child.