Judgment rendered November 17, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,164-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

IN RE:  DANIEL HAMILTON MCCARTHY
APPLYING FOR INTRAFAMILY ADOPTION
OF G.M.V.

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. A-4199

Honorable Robert C. Johnson, Judge

* * * * *

| | |
|---|---|
| CUMMINS AND FITTS, LLC<br>By: Sophie N. Barksdale<br>    Jessica L. Fitts | Counsel for Appellant,<br>Daniel Hamilton McCarthy |
| MARSHALL L. SANSON | Counsel for Appellee,<br>Ashley Nicole McCarthy |
| THE LOWERY LAW FIRM<br>By: Scotty W. Lowery | Counsel for Appellee,<br>G.M.V. |

* * * * *

Before STONE, COX, and ROBINSON, JJ.

**COX, J.**

This appeal arises from the Fourth Judicial District Court, Ouachita Parish, Louisiana. Daniel McCarthy ("Mr. McCarthy"), the maternal uncle, appeals the trial court's denial of his request for an intrafamily adoption of G.M.V. The trial court found that the adoption was not in the best interest of the child and Ashley McCarthy's ("Ms. McCarthy") consent as the natural mother was required. For the following reasons, we remand this matter for further proceedings in accordance with this opinion.

## FACTS

On December 3, 2009, G.M.V. was born to Ms. McCarthy and the alleged father, Felipe Dejesus Vazquez. On May 19, 2014, under the direction of Texas Child Protective Services, G.M.V. was placed in the physical care and custody of Mr. McCarthy and his now ex-wife, Lacey McCarthy ("Lacey"). On May 19, 2014, Ms. McCarthy consented to an authorization agreement of a nonparent relative, granting Mr. McCarthy and Lacy temporary custody and the ability to execute parental decisions on G.M.V.'s behalf. Mr. McCarthy and Lacy then filed a joint petition for temporary custody of G.M.V. On September 25th, 2014, Judge Johnson approved a consent judgment which granted joint custody to Mr. McCarthy and Lacy, subject to reasonable supervised visitation rights in favor of Ms. McCarthy.

On June 22, 2020, Mr. McCarthy filed a petition for intrafamily adoption of G.M.V. He asserted that neither Ms. McCarthy nor the alleged father's consent to the adoption was required, pursuant to La. Ch. C. art. 1245, because each failed to visit, communicate, or attempt to communicate with G.M.V., without just cause, for a period exceeding six months. The

petition further alleged that despite the fact that Ms. McCarthy was granted reasonable visitation, she failed to exercise those rights, resulting in a failure to visit and communicate with G.M.V. for multiple periods of time in excess of six months. On August 5, 2020, Ms. McCarthy filed an opposition to the intrafamily adoption, claiming that Mr. McCarthy purposefully interfered with her visitations and alienated G.M.V. from her.

Trial on this matter was held on October 8, 2020, where the trial court heard testimony from several witnesses, including: Ms. McCarthy, Mr. David McCarthy, the maternal grandfather, Whitney Foster, LPC ("Ms. Foster"), G.M.V.'s counselor, and Mr. McCarthy. On November 13, 2020, counsel for G.M.V. was appointed. On November 30, the child's counsel recommended that the adoption was in G.M.V.'s best interest. Specifically, counsel's report highlighted that Ms. McCarthy not only admitted that she had not exercised her visitation rights with G.M.V. from 2016 until 2017, but that for the totality of the 6 ½ that G.M.V. resided with Mr. McCarthy, Ms. McCarthy had only visited with G.M.V. 6 times, one of which was a telephone call.

In addition, the report by G.M.V.'s counsel provided that it appeared that Ms. McCarthy prioritized her job over her relationship with G.M.V., and as a result, has neglected to correspond with the minor despite having ample opportunities and multiple avenues to effect communication with G.M.V. Counsel asserted that because the primary motivating factor for Ms. McCarthy did not appear to be the best interest of the child, but her own desire to restore her parental primacy as exemplified through the multiple missed visitations, the adoption would be in G.M.V.'s best interest.

2

On January 13, 2021, another hearing was held and the trial court heard arguments concerning the validity of the joint custody order due to lack of service on the alleged father. At the close of arguments, the trial court orally denied the intrafamily adoption, finding that Mr. McCarthy failed to prove by clear and convincing evidence that Ms. McCarthy's consent was not required pursuant to La. Ch. C. art. 1245(B)(2); therefore, the consent of the natural mother could not be dispensed with prior to the adoption. The trial court further found that the adoption was not in G.M.V.'s best interest. No written reasons were given for this judgment.

## DISCUSSION

On appeal, Mr. McCarthy argues that the trial court erred in failing to find that Ms. McCarthy's consent to the intrafamily adoption was not unnecessary under La. Ch. C. art. 1254 because she failed to communicate with G.M.V., without just cause, for multiple periods of time exceeding six months since the trial court granted the original consent judgment in 2014.

As a general proposition, intrafamily adoptions are authorized by La. Ch. C. arts. 1170 and 1243, *et seq.* Persons who may petition for an intrafamily adoption are set forth in La. Ch. C. art. 1243(A), which provides in pertinent part:

> A stepparent, stepgrandparent, great-grandparent, grandparent, or collaterals within the twelfth degree may petition to adopt a child if all of the following elements are met:
>
> 1) The petitioner is related to the child by blood, adoption, or affinity through the mother of the child or through a father who is filiated to the child in accordance with the Civil Code.
>
> (2) The petitioner is a single person over the age of eighteen or a married person whose spouse is a joint petitioner.
>
> (3) The petitioner has had legal or physical custody of the child for at least six months prior to filing the petition for adoption.

3

Although a natural parent's consent to an intrafamily adoption is generally required under La. Ch. C. art. 1193, consent may nevertheless be dispensed upon proof that the natural parent forfeited her right to consent as follows:

A. The consent of the parent as required by Article 1193 may be dispensed with upon proof by clear and convincing evidence of the required elements of either Paragraph B or C of this Article at the hearing on the opposition and petition.

B. When a petitioner authorized by Article 1243 has been granted custody of the child by a court of competent jurisdiction and any one of the following conditions exists:

(1) The parent has refused or failed to comply with a court order of support without just cause for a period of at least six months.

(2) The parent has refused or failed to visit, communicate, or attempt to communicate with the child without just cause for a period of at least six months.

C. When the spouse of a stepparent petitioner has been granted sole or joint custody of the child by a court of competent jurisdiction or is otherwise exercising lawful custody of the child and any one of the following conditions exists:

(1) The other parent has refused or failed to comply with a court order of support without just cause for a period of at least six months.

(2) The other parent has refused or failed to visit, communicate, or attempt to communicate with the child without just cause for a period of at least six months.

The party petitioning the court for adoption carries the burden of proving, by clear and convincing evidence, that a parent's consent is not required under the law. Once a *prima facie* case is proven, the burden of proof shifts to the nonconsenting natural parent to show that her failure to visit the children or to comply with the child support order was due to factors beyond her control. *In re D.L.D.*, 53,758 (La. App. 2 Cir. 1/13/21), 310 So. 3d 314; *In re B.J.C. Applying for Intrafamily Adoption*, 51,110 (La.

App. 2 Cir. 9/28/16), 206 So. 3d 337. However, even upon a showing that the natural parent's consent may be dispensed, the court must nevertheless determine whether the proposed adoption and permanent severance of the natural parent's relationship is in the best interest of the child. *In re D.L.D., supra; In re R.A.L. Applying for Intrafamily Adoption of K.B.T.M.*, 54,052 (La. App. 2 Cir. 7/14/21), ---So. 3d--- 2021 WL 2944401; *In Re K.S.S. Applying for Intrafamily Adoption*, 18-103 (La. App. 5 Cir. 8/21/18), 253 So. 3d 1311.

Whether a proposed adoption is in the child's best interest must be decided on the unique facts of each case. *In re R.A.L., supra*; *In re Morris,* 39,523 (La. App. 2 Cir. 1/26/05), 892 So. 2d 739. In determining whether an intrafamily adoption is in the child's best interests, courts must consider that the legal consequences of adoption are abrupt, severe, and irrevocable. In making the determination, it is not enough to consider only the love and home environment provided by the adoptive party; rather, the court should also consider the depth and closeness of the child's ties with the noncustodial natural parent and the effect the loss of this relationship would have on the child. *In re R.A.L., supra*; *In re Morris, supra; In re Puckett*, 49,046 (La. App. 2 Cir. 4/17/14), 137 So. 3d 1264. Although the natural parent's failure to support the child is a factor to be considered, it is not a controlling factor. *In re R.A.L., supra,* citing *In re Leitch*, 32,021 (La. App. 2 Cir. 3/31/99), 732 So. 2d 632.

Because the trial judge is in a better position to determine the best interest of the child, he is vested with vast discretion in making this determination and this court will ordinarily not second-guess such sensitive decisions. *In re Morris*, *supra*. However, such discretion is not absolute,

and the court's decision is subject to reversal if found to be manifestly erroneous or clearly wrong. *In re Puckett*, *supra*.

However, this Court declines to opine on the merits of the issues presented, specifically, whether Mr. McCarthy may properly seek to adopt G.M.V. Instead, after a thorough review of this record, We find that before this matter can be addressed, further inquiry is required regarding all of the facts and circumstances in this case, including, but not limited to the following: 1) the unilateral authority granted to Mr. McCarthy and Lacey in the 2014 custody order; 2) Lacey maintained legal and physical custody of G.M.V. throughout the proceedings, but did not testify; 3) whether G.M.V. expressed a desire to be adopted to the trial court; 4) the custody arrangement Mr. McCarthy had over his minor child from his marriage to Lacey, and G.M.V. directly prior to the filing of the petition for intrafamily adoption, in light of La. Ch. C. art. 1243 and why he did not have over them at the time of filing his petition for intrafamily adoption; and 5) the trial court's reasons regarding the denial of the intrafamily adoption considering Ms. McCarthy's positive drug test and admission in failing to exercise her visitation rights.

On September 25, 2014, the trial court granted Mr. McCarthy and Lacey joint custody over G.M.V. subject to reasonable supervised visitation rights in favor of Ms. McCarthy. Specifically, the order provided:

> Plaintiffs and Defendants stipulate that joint custody of the minor child be given and awarded to the Plaintiff Daniel McCarthy and Lacey McCarthy, with Plaintiff being designated as domiciliary custodian subject to the right of the defendant, Ashley, to exercise reasonable supervised visitation with the minor child, with such visitation to be **conducted under the supervision of the plaintiffs or a person acceptable to them.** (Emphasis added).

6

During Ms. McCarthy's testimony, she stated that Mr. McCarthy and Lacey often thwarted her efforts to properly exercise her visitation rights, the trial court judge stated, in part:

> . . . both parties come together and they both have an input on who the supervising person is going to be. There's rarely unilateral [sic] action by one party to the exclusion of the other since they both have joint custody.
> …
> . . . would never have approved it. I think that both parties should have input on that. And that got past me. I'll be honest with you. I don't think that in a situation like this that [sic], where you have joint custody that one party should dominate that. Period.

Because Ms. McCarthy testified several times throughout the hearing that Mr. McCarthy and Lacey often prevented her from having contact with G.M.V., this Court respectfully requests further inquiry be made addressing whether the 2014 custody order hindered Ms. McCarthy's ability to exercise her visitation rights. Specifically, whether the supervised visitations with Ms. Foster significantly impacted Ms. McCarthy's rights, whether financially or otherwise, given that each session was to be paid for by the scheduling party, and that the fact that Ms. McCarthy resided in another state.

Next, this Court notes the relevant timeline of events concerning custody of G.M.V. as between Ms. McCarthy, Mr. McCarthy, and Lacey as follows:

**September 25, 2014:** Mr. McCarthy and Lacey were granted joint custody over G.M.V. subject to reasonable supervised visitation in favor of Ms. McCarthy.

**June 21, 2016:** Mr. McCarthy and Lacey filed a petition for divorce.

**June 30, 2017:** Mr. McCarthy and Lacey's divorce is finalized.

7

**March 4, 2019:** Judge Robert Johnson granted Lacey domiciliary custody over G.M.V., subject to visitation rights in favor of Mr. McCarthy.

Although the record does not contain a copy of the 2019 custody order, the trial judge reflected on the issue twice during the proceedings, stating:

> I guess I'm trying to see how – the concern that I have is how does this particular order, the stipulated order conflict with my previous order with respect to the custody of the child. If the child was previously this court's order granting–the custody of the child was granted to Mr. McCarthy, how then, I'm trying to understand, how then does non[biological] parent or relative of the child gets primary domiciliary custody of the child via this stipulated judgment when the previous judgment that I entered awarded custody pursuant to the agreement between Ms. McCarthy and her brother Mr. McCarthy with him being the primary domiciliary person and her having certain specific visitation rights under that order. I'm trying to see how did this order come about which apparently conflicts with that by awarding domiciliary custody to a nonparent, nonbiological relative of the child.

This Court, based on the information provided in the record, recognizes that Lacey has maintained domiciliary custody of G.M.V. consistently since 2014, and as mentioned during the hearing, has presumably continued to exercise domiciliary custody directly prior to the filing of the petition for intrafamily adoption. The paramount concern and consideration in any adoption proceeding is the best interest of the child. Accordingly, this Court finds that Lacey is a necessary witness to the proceeding primarily because she has consistently retained physical and legal custody over G.M.V. Because of this, Lacey is likely to be in a greater position to testify to the child's needs. Her testimony regarding the intrafamily adoption is required to accurately evaluate whether the adoption would be in G.M.V.'s best interest.

Next, the record reflects that the trial court expressed a desire to speak with the child, but when the matter came forth, stated, "[N]o. Not at this

time." Whether the trial court was able to speak with G.M.V. is left open in the record. This Court requires further clarification as to whether the trial court judge spoke to G.M.V. and whether this discussion was taken into consideration in his decision.

Further, this Court is of the opinion that Mr. McCarthy's custody arrangement over G.M.V. and his minor son, directly prior to the filing of the petition for intrafamily adoption, should be addressed. When counsel for G.M.V. presented his recommendation on the intrafamily adoption, the trial court clarified the custody arrangement for counsel, stating:

> . . . the child really stays primarily with the ex-wife who is—has no biological affiliation with the child, or I mean, no connection with the child. But under this custody decree that was rendered by the [c]ourt, that's child got there and that's where the child is today, as I understand it.

Adoption has been described as a creature of statute, such that all statutory requirements must be strictly carried out, *In re Byrd*, 226 La. 194, 199, 75 So.2d 331, 332 (1954). With the trial court acknowledging that Lacey, rather than Mr. McCarthy, had physical and legal custody over G.M.V. and the minor son prior to Mr. McCarthy filing his petition, we find that Mr. McCarthy's custody status over G.M.V. should be evaluated in light La. Ch. C. art 1243 at the time he filed the petition for intrafamily adoption.

Finally, at the conclusion on the hearing, the trial court orally denied the adoption, without written reasons, providing later that Ms. McCarthy's consent was required, could not be dispensed with, and that the adoption was not in the best interest of the child. However, this Court is troubled by Ms.

9

McCarthy testing positive for THC during the hearing,[1] and statements she made regarding her lack of visitation with G.M.V. prior to this hearing. These gaps in visitation need to be addressed by the trial court.

Due to the considerations stated above, this Court, before deciding the merits of the issues before it, orders that this case be remanded, with instructions to the trial court to set forth written reasons for the denial of the intrafamily adoption with due consideration to the aforementioned matters.

## CONCLUSION

For the aforementioned reasons, we respectfully remand this matter to the trial court for further proceedings consistent with this opinion.

**REMANDED WITH INSTRUCTIONS.**

---

[1] Although Ms. McCarthy later stated that she likely tested positive because she tried a "CBD joint" three weeks prior but was unaware of what it was, we note that the trial court made no further inquiry as to the result of the tests.