Judgment rendered February 28, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,622-JAC

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

IN RE: DEREK WAYNE FOWLER
AND REBECCA AINLEY FOWLER APPLYING
FOR INTRAFAMILY ADOPTION OF: H.S.A.

* * * * *

Appealed from the
Fifth Judicial District Court for the
Parish of West Carroll, Louisiana
Trial Court No. 339

Honorable Clay Hamilton, Judge

* * * * *

| | |
|---|---|
| NICHOLAS AARON DABBS | In Proper Person, Intervenor-Appellant |
| AMY COATH JOHNSON | Counsel for Appellees, Derek Wayne Fowler and Rebecca Ainley Fowler |

* * * * *

Before PITMAN, STONE, and ROBINSON, JJ.

**PITMAN, C. J.**

Intervenor-Appellant Nicholas Aaron Dabbs appeals the final decree of adoption granted by the trial court in favor of Petitioners-Appellees Derek Wayne Fowler and Rebecca Ainley Fowler. For the following reasons, we affirm.

## FACTS

On June 19, 2023, the Fowlers filed a petition for stepparent adoption. They stated that Rebecca is the biological mother of H.S.A., whose date of birth is February 10, 2015; Rebecca and Derek married on April 22, 2023; Derek wished to adopt H.S.A.; and Rebecca consented to the adoption. They noted that Dabbs is the biological father of H.S.A., Rebecca has sole custody and Dabbs was awarded visitation. They stated that Dabbs was arrested in January 2023 for failure to pay child support; he pled guilty in March 2023; and he is in arrears in the amount of $17,538.55. They stated that Dabbs has not paid child support or contacted H.S.A. for a period of over six months; and, therefore, his consent to the adoption could be dispensed with. They argued that the adoption was in the best interest of the child.

On June 26, 2023, Dabbs filed a response and stated that he opposed the adoption. He noted that he paid monthly child support since October 2018, except for 13 months when he did not pay. He stated that child support is taken out of his paycheck, and he pays extra each month for the arrears. He also alleged that he tried to communicate with and see H.S.A. but that Rebecca moved, changed her phone number and refused to allow visitation.

A hearing was held on August 14, 2023. Dabbs stated that he opposed the adoption because there was an ongoing custody and contempt matter in another parish. Counsel for the Fowlers replied that there was a final judgment in the custody matter and that Dabbs filed the rule for contempt after the adoption was initiated in an effort to derail the adoption. Counsel for the Fowlers then argued that Dabbs's consent to the adoption was not required because two conditions of La. Ch. C. art. 1245 had been met—a period of six months without paying court-ordered child support and a period of six months with no contact.

Rebecca testified that Dabbs was first ordered to pay child support in March 2017, retroactive to July 2015; that she did not receive a child support payment until October 2018; and that Dabbs was over $15,000 behind in child support payments. She testified that she received sole custody of H.S.A. in 2019, that Dabbs had visitation and that H.S.A. last saw Dabbs in December 2018. She noted that the last day H.S.A. was in his custody, he was arrested for robbing a house. She testified that in early 2019, Dabbs began contacting her about visitation and threatened her on Facebook, so she did not respond. She noted that she did not hear from Dabbs for over four years until he initiated new custody proceedings. She stated that their custody arrangement was not changed and that she was not found to be in contempt of court. She noted that Dabbs was ordered to submit to a drug test before obtaining any visitation and that he did not submit to the test. She stated that H.S.A. does not know who Dabbs is, and she wished for her husband to adopt H.S.A. On cross-examination, Rebecca testified that she is now receiving child support payments. She noted that she changed her phone number, that Dabbs has her new phone number and that she never

2

blocked Dabbs's phone number. She stated that she did block him and his family on Facebook but that they could communicate with her by phone.

Dabbs testified that he began making child support payments in October 2018. He stated that prior to this time, he submitted payments to Child Support Enforcement Services, but his payments were returned. He admitted that he had been arrested for nonpayment of child support and that he was sentenced to probation. He testified that he had not seen H.S.A. since December 2018 because Rebecca kept her from him. He stated that H.S.A. was not with him when he committed the crime of burglary or when he was arrested for it. He alleged that he did take a drug test in a timely manner. He agreed that Rebecca had reasons to be concerned about H.S.A. being in his care. He stated that he last contacted Rebecca in October 2022 by text message but that she never responded. He recalled that in a deposition he stated that on two occasions he went at least 18 months without contacting Rebecca about H.S.A.

The trial court found that the Fowlers established that there was a period in excess of six months that Dabbs failed to pay child support. It noted that Dabbs was currently on probation for failing to pay child support and was in arrears in the amount of $17,538.55. It also found, by Dabbs's own admission, that he failed to communicate with H.S.A. for approximately four years. The court stated that this failure was not due to any actions of Rebecca. Dabbs interrupted the trial court to state that he did try to go to court over visitation but that his court dates were continued due to the pandemic and then his attorney was disbarred. The trial court responded that his failure to pay child support was more than sufficient to

3

determine that his consent was not required for this adoption. The trial court stated that it would issue a judgment granting the intrafamily adoption.

On August 17, 2023, Dabbs filed a letter to the trial court and requested a new trial or appeal. He alleged that his due process rights were violated because he was never offered counsel, which resulted in him not having an adequate defense. He also argued that the trial should have been held in Ouachita Parish, where there was ongoing litigation about custody. The trial court denied the motion for new trial.

On August 23, 2023, the trial court filed a final decree of adoption. It stated that the Fowlers met their burden of proof by clear and convincing evidence that Dabbs failed to pay court-ordered child support for a period in excess of six months and that he failed to establish just cause for his failure to do so. Therefore, it found that Dabbs's consent was not required. It determined that adoption was in the best interest of the child, terminated Dabbs's parental rights and entered a final decree of adoption.

Dabbs appeals.

## DISCUSSION

### *Venue*

Dabbs argues that the Fifth Judicial District Court ("JDC") was not the proper venue for the adoption.

The Fowlers argue that the Fifth JDC is the proper venue pursuant to La. Ch. C. art. 1180 because it includes the parish that is the domicile of the petitioners. They contend that the fact that custody litigation took place in another JDC has no bearing on the proper venue for an adoption proceeding.

Venue means the parish where an action or proceeding may properly be brought and tried under the rules regulating the subject. La. C.C.P.

art. 41. La. Ch. C. art. 1180(A) states that a proceeding for the adoption of a child may be commenced in:

> (1) The juvenile court in the parish of the domicile of the petitioner.
> (2) The juvenile court in the parish of the domicile of the custodian of the child.
> (3) The juvenile court in the parish in which a voluntary act of surrender has been executed with respect to the child to be adopted.
> (4) The juvenile court in which the child has been adjudicated a child in need of care or in which the child in need of care proceeding is pending.
> (5) The juvenile court which previously terminated parental rights of a parent with respect to the child to be adopted.

The Fowlers are domiciled in West Carroll Parish. None of the other options listed in La. Ch. C. art. 1180(A) are applicable to this case. Therefore, the Fifth JDC, which includes West Carroll Parish, is the proper venue for this adoption proceeding.

Accordingly, this assignment of error lacks merit.

*Subject Matter Jurisdiction*

Dabbs argues that the Fifth JDC did not have subject matter jurisdiction to hear this case. He contends that it should have been heard by the Fourth JDC because custody litigation is ongoing in that court.

The Fowlers argue that the Fifth JDC had subject matter jurisdiction in this case. They agree that the Fifth JDC would have lacked the legal authority to consider a petition for adoption if there were ongoing custody litigation pending elsewhere. However, they state that when they filed the petition for adoption, no custody proceedings were pending in the Fourth JDC and that all legal issues had been resolved. They explain that Rebecca was awarded sole custody in 2019, Dabbs filed a rule for contempt in November 2022 regarding visitation, Rebecca filed a counter rule in

5

February 2023 and the Fourth JDC dismissed both rules on June 14, 2023, which was before they filed the petition for adoption. They emphasize that Dabbs filed a second rule for contempt with the Fourth JDC after they filed the petition for adoption with the Fifth JDC.

The issue of subject matter jurisdiction addresses the court's authority to adjudicate the cause before it; the issue may be considered at any time, even by the court on its own motion, at any stage of an action. *Boudreaux v. State, Dep't of Transp. & Dev.*, 01-1329 (La. 2/26/02), 815 So. 2d 7. Whether a district court has subject matter jurisdiction over a case is subject to *de novo* review. *Larkin Dev. N., L.L.C. v. City of Shreveport*, 53,374 (La. App. 2 Cir. 3/4/20), 297 So. 3d 980, *writ denied,* 20-01026 (La. 12/22/20), 307 So. 3d 1039.

In *In re Adoption of C.S.*, 505 So. 2d 1010, (La. App. 2 Cir. 1987), *writ denied*, 508 So. 2d 90 (La. 1987), this court found that prior custody judgments from a different JDC did not preclude jurisdiction and venue over a subsequent adoption proceeding in another JDC.

Louisiana's First, Third and Fifth Circuit Courts of Appeal have found that where custody-related litigation is pending, the court presiding over that litigation, and no other, has the exclusive authority to hear and adjudicate the petition for intrafamily adoption. *In re A.A.*, 23-45 (La. App. 5 Cir. 5/24/23), 366 So. 3d 811, *writ denied*, 23-00884 (La. 9/6/23), 369 So. 3d 1272, *citing In re D.C.M.*, 13-0085 (La. App. 1 Cir. 6/11/13), 170 So. 3d 165, *writ denied*, 13-1669 (La. 7/17/13), 118 So. 3d 1102, and *C.D.J. v. B.C.A.*, 11-378 (La. App. 3 Cir. 10/5/11), 74 So. 3d 300. Forum-shopping should be minimized in proceedings that involve the custody of a child because at the center of these proceedings, the question is what is in the best

interest of the child. *In re A.A.*, *supra*. It was not the intent of the law for the provisions of La. Ch. C. art. 1245 to apply where there is ongoing litigation relating to custody. *Id.*, *quoting C.D.J. v. B.C.A.*, *supra*.

When the Fowlers filed their petition for stepparent adoption, there was no ongoing or pending litigation in the Fourth JDC that would have given it the exclusive authority to hear and adjudicate the petition for adoption. Prior custody and support judgments from the Fourth JDC did not preclude jurisdiction and venue over the subsequent adoption proceeding in the Fifth JDC. The Fifth JDC had subject matter jurisdiction in this case.

Accordingly, this assignment of error lacks merit.

*Consent of the Biological Father*

Dabbs argues that the trial court erred in determining that his consent could be dispensed with and then granting the intrafamily adoption. He states that since he was ordered to pay child support through Child Support Enforcement Services, there has not been a six-month period where he missed a payment of his child support obligation. He also alleges that he made numerous efforts to contact H.S.A. but that Rebecca denied him contact by blocking his phone number and social media accounts. He contends that he has shown his willingness to pay all child support obligations and efforts to have visitation with H.S.A. He states that this court should reinstate his parental rights and reverse the granting of the adoption.

The Fowlers argue that the trial court properly dispensed with Dabbs's consent pursuant to La. Ch. C. art. 1245. They contend that the record demonstrates through Rebecca's testimony and Dabbs's admission that he failed to pay court-ordered child support for periods of at least six months.

7

They also state that Dabbs did not prove that his failure to comply with the child support order was due to factors beyond his control. They note that he also admitted that he went at least 18 consecutive months without attempting to contact Rebecca or H.S.A. The Fowlers also argue that the trial court properly granted the adoption because it was in the best interest of the child.

Relevant to the facts of this case, a stepparent may petition to adopt a child if he is related to the child by blood, adoption, or affinity through the mother of the child; is a married person whose spouse is a joint petitioner; and has had legal or physical custody of the child for at least six months prior to filing the petition for adoption. La. Ch. C. art. 1243(A).

The consent of both the child's mother and father is generally required for an intrafamily adoption. La. Ch. C. art. 1193. La. Ch. C. art. 1244 provides how a parent may consent to the adoption of his child, and La. Ch. C. art. 1244.1 states how a parent, whose rights have not been terminated or who has not previously consented to the adoption, may oppose the adoption.

La. Ch. C. art. 1245 provides certain situations where a parent's consent may be dispensed with and states in part:

> A. The consent of the parent as required by Article 1193 may be dispensed with upon proof by clear and convincing evidence of the required elements of either Paragraph B or C of this Article at the hearing on the opposition and petition.
> ***
> C. When the spouse of a stepparent petitioner has been granted sole or joint custody of the child by a court of competent jurisdiction or is otherwise exercising lawful custody of the child and any one of the following conditions exists:
> (1) The other parent has refused or failed to comply with a court order of support without just cause for a period of at least six months.
> (2) The other parent has refused or failed to visit, communicate, or attempt to communicate with the child without just cause for a period of at least six months.

8

The failure of a parent to provide court-ordered support for the child or to communicate with the child without just cause represents a failure by the parent to foster the parent-child relationship and allows a stepparent to adopt the child. *In re Puckett*, 49,046 (La. App. 2 Cir. 4/17/14), 137 So. 3d 1264. Such intrafamily adoption terminates parental rights of the biological parent failing to contact the child. *Id.*, *citing* La. Ch. C. art. 1256.

The party petitioning the court for adoption carries the burden of proving that a parent's consent is not required under the law by clear and convincing evidence. *In re D.L.D.*, 53,758 (La. App. 2 Cir. 1/13/21), 310 So. 3d 314. Once a prima facie case is proven, the burden of proof shifts to the nonconsenting parent to show that his failure to comply with the child support order or to visit the child was due to factors beyond his control. *Id.* Even if the parent's failure was without just cause, the judge nonetheless must determine whether the proposed adoption and consequent severance of the parental relationship are in the best interest of the child. *Id.*

Whether an adoption is in a child's best interest must be decided on the unique facts of each case, and the trial judge is vested with vast discretion in making that determination. *In re Morris*, 39,523 (La. App. 2 Cir. 1/26/05), 892 So. 2d 739. Because the trial court judge is in a better position to make the best-interest determination, this court will ordinarily not second-guess such sensitive decisions. *Id.* However, the trial judge's discretion is not absolute, as the court's decision is subject to reversal if found to be manifestly erroneous or clearly wrong. *Id.*

In this case, the trial court was not manifestly erroneous or clearly wrong in finding that the Fowlers proved by clear and convincing evidence that Dabbs's consent was not required pursuant to La. Ch. C. art. 1245. The

9

trial court also did not err in finding that the adoption was in H.S.A.'s best interest and then granting the petition for intrafamily adoption.

The Fowlers demonstrated that Dabbs failed to comply with a court order of child support without just cause for a period exceeding six months. At the hearing, Rebecca testified that Dabbs was first ordered to pay child support in March 2017, retroactively to 2015, but that she did not receive a payment until October 2018. She produced an affidavit of arrearages that showed the monthly amounts owed from July 2015 to February 2019, that the order of support was entered in March 2017 and that Dabbs failed to make a payment until October 2018. She stated that at the time of the hearing, he was over $15,000 behind in child support payments.

The Fowlers also showed that Dabbs failed to visit, communicate or attempt to communicate with H.S.A. without just cause for a period exceeding six months. At the hearing, Rebecca testified that Dabbs had not seen H.S.A. since December 2018 until he initiated custody proceedings four years later. She detailed how she preserved avenues of communication so that Dabbs could reach her by phone regarding H.S.A. She also discussed how Dabbs's refusal to submit to a drug test prevented him from having visitation with H.S.A.

Rather than proving that either failure was due to factors beyond his control, Dabbs admitted to both instances set forth in La. Ch. C. art. 1245(C). He stated that he began making child support payments in October 2018 and that he was later convicted and sentenced for nonpayment of child support. At the August 2023 hearing, he testified that he had not seen H.S.A. since December 2018. He attempted to show just cause by claiming

10

Rebecca kept H.S.A. from him but he also recalled that on two occasions he went at least 18 months without contacting Rebecca about H.S.A.

Accordingly, this assignment of error lacks merit.

## CONCLUSION

For the foregoing reasons, we affirm the final decree of adoption granted by the trial court in favor of Petitioners-Appellees Derek Wayne Fowler and Rebecca Ainley Fowler. Costs of this appeal are assessed to Intervenor-Appellant Nicholas Aaron Dabbs.

**AFFIRMED.**